213 So.2d 537 (1968)
Al CALLAIS et ux.
v.
FURNITURE SHOWROOMS, INC., et al.
No. 7348.
Court of Appeal of Louisiana, First Circuit.
April 8, 1968.
*538 Gerald L. Walter, Jr., of Kantrow, Spaht, Weaver & Walter, Baton Rouge, for appellants.
Charles W. Franklin, of Franklin & Keogh, Baton Rouge, for appellees.
Before LANDRY, REID and BAILES, JJ.
LANDRY, Judge.
Defendants herein, Furniture Showrooms, Inc. (Showrooms) and its liability insurer, Hartford Accident & Indemnity Company (Hartford), take this appeal from the judgment of the trial court awarding plaintiffs Al Callais and Elizabeth Miller Callais (husband and wife) damages for personal injuries sustained by Mrs. Callais in a fall which occurred on Showroom's premises and medical expense incurred by Mr. Callais in the treatment of his wife's injuries. Mr. and Mrs. Callais have answered the appeal, the former asking for an unspecified increase in special damages to cover future medical expense, and the latter praying that the award to her for personal injuries in the sum of $3,500.00 be adjudged inadequate and increased to $6,500.00. We find the award to Mrs. Callais was insufficient to fully compensate her for the injuries received and increase said amount to the sum of $6,500.00 prayed for.
The instant case is somewhat distinguishable from the usual "slip and fall" action in that Mrs. Callais fell while playing the role of "rescuer" or "good Samaritan" in that she was attempting to prevent the fall of an acquaintance whom she accompanied to defendant's store. The companion, Mrs. Shirley Ann Robertson, who was then seven months pregnant, tripped over a pile of throw rugs stacked on the floor as part of a furniture display, Mrs. Callais, a Registered Nurse, prevented Mrs. Robertson's fall but in the process herself fell fracturing her right fibula just above the ankle.
*539 The record discloses that Showrooms, a household furniture store of considerable proportions, was in the process of liquidating its affairs by holding a "going out of business sale." For approximately two weeks prior to the date of the accident, the establishment was closed in preparation for the pending event. A team of three professional liquidators composed of Paul Gaspard as Manager, and Olid John Hollier and Regis Lionel Soileau, Salesmen, was engaged to price all defendant's stock and arrange it for display. When all was in readiness, letters were dispatched to patrons of record and other prospective purchasers informing them of a "preferred customer's sale" to be held by Showrooms. In effect the letters of invitation bid the addressees come to the defendant's store, admission to which could be gained only upon presentment of the written invitation. In response to such solicitation, Mrs. Callais accompanied Mrs. Robertson to defendant's premises on July 25, 1966.
It is undisputed that defendant's establishment, embracing some 20,000 square feet of floor space, was virtually covered with furniture in anticipation of the impending liquidation sale. Gaspard and his assistants had arranged displays of household items in such fashion that a wide aisle was provided from the front entrance to the rear of the building. Along this aisle furniture was arranged to simulate "rooms", that is, to represent the several types of chambers or compartments found in modern homes. To accomplish the desired illusion, a space approximately 12 by 12 feet was devoted to each "room." In these individual areas living room furniture was arranged to create the impression of a living room, bedroom furniture was placed as it would ordinarily appear in a boudoir and dining room furniture was displayed accordingly. Mingled with the various arrays were appropriate "accessories" such as lamps, pictures, tables and other decorative and useful objects. To heighten the impression of "rooms", screens were utilized to represent walls, thus separating and distinguishing each "room" from the other. These numerous "rooms" were designed so that ingress and egress to those not facing the main aisle was had by means of openings or gaps usually effected by leaving a space of from two to four feet between selected objects forming a part of the furnishings of each "room." In this manner customers could and were expected to walk about the entire store wending their way at will from exhibit to exhibit.
On the day in question Mrs. Robertson and Mrs. Callais were examining the various displays, Mrs. Callais particularly desiring to purchase a "screen", the exact nature of which is not explained in the record. The ladies were near the back of the establishment viewing an arrangement of Early American Furniture when Mrs. Robertson, walking ahead of Mrs. Callais, stumbled over a pile of throw rugs stacked on the floor. She cried out in distress whereupon Mrs. Callais instinctively lunged forward, took hold of Mrs. Robertson and prevented Mrs. Robertson from falling to the floor. The rescue maneuver caused Mrs. Callais herself to fall landing with her head on the floor and her feet on the pile of throw rugs over which Mrs. Robertson tripped. In falling, plaintiff received the injuries for which she now seeks damages.
The question of Showrooms' liability vel non must be determined in the light of certain well established principles which are admitted by the parties to be applicable herein.
A storekeeper must maintain his premises in reasonably safe condition considering the nature of his business, for the use of his patrons and customers who may be expected to be primarily concerned with viewing merchandise on display more so than paying attention to the condition of the floor for the discovery of possible obstructions and hazards in the passageways. Robnett v. Great American Insurance Co. of New York, La.App., 187 So.2d 152.
While a shopkeeper is not the insurer of the safety of his invitees, he nevertheless *540 owes his customers the duty of providing a safe place in which they may shop. This burden includes the onus of providing clear and safe passageways in which the patrons may walk and move about and also the obligation of warning the customer of hazards of which the patron is otherwise unaware. Lawson v. Continental Southern Lines, Inc., La.App., 176 So.2d 220.
In such instances the owner or lessee of the business establishment is not liable unless the injury results from his negligence. If the storekeeper was aware, or by the exercise of ordinary and reasonable care should have been aware, of the hazard or peril, he will be deemed negligent and consequently liable for the patron's injuries. Provost v. Great Atlantic & Pacific Tea Co., La.App., 154 So.2d 597.
An individual placing himself in a position of danger as the result of an emergency is not held to the same degree of care normally required of an ordinarily prudent person. One who acts upon sudden impulse as "rescuer" or "good Samaritan" in coming to the aid of another in danger, peril or distress, is not guilty of contributory negligence in exposing himself to a known or obvious danger, if under similar circumstances an ordinarily prudent person might have done likewise, or if the attempted rescue was not such as to make the effort rash and reckless in the judgment of an ordinarily prudent person. Coulton v. Caruso, La.App., 195 So. 804.
It is conceded by the parties that Showrooms must be found negligent toward Mrs. Robertson for its liability to attach herein. It is also granted that under the circumstances attending the case at hand, Mrs. Callais may not be found contributorily negligent and that if Showrooms be deemed negligent plaintiffs are entitled to recover but not in any amount greater than the sum awarded by the trial court. Defendants maintain, however, Showrooms was not negligent because the throw rugs were in plain sight with a clear unobstructed area of at least two to four feet on all sides thus affording customers safe passage around the obstacle. On this premise it is argued that not only was defendant not guilty of negligence in creating a dangerous trap or obstruction in an aisle where customers might reasonably be expected to walk, but also that Mrs. Robertson was guilty of contributory negligence in not detecting the obvious. Plaintiffs contend, however, the rugs were piled near a couch in such manner as to be partially obscured by the sofa and at the same time protrude to some extent into an "aisle" from the exhibit in question to the next display toward which Mrs. Robertson was proceeding.
The record discloses the rugs in question were of Early American design and uniform oval shape measuring approximately two by four feet. It further appears the individual rugs were approximately one-half inch thick and were piled one atop the other to a height of from four to eight inches. Plaintiffs acknowledge that Mrs. Callais did not see the rugs before the accident as she was following Mrs. Robertson who was walking ahead.
In substance Mrs. Robertson testified that she did not see the rugs prior to stumbling over them. Although defendants point to certain contradictions and variances in her testimony, Mrs. Robertson in effect stoutly denied the carpets were stacked with a clear walking space all around them as defendants contend. On the contrary, she repeatedly stated the carpets were protruding into one of the aisles and were obscured or hidden by the "point of a couch" which formed a part of the Early American grouping the ladies were in the process of viewing. The gist of Mrs. Robertson's evidence is that in attempting to pass through the "aisle", the point of her shoe became entangled in the pile of rugs causing her to trip and give an outcry.
Mrs. Callais' testimony is simply to the effect she heard her friend's cry of distress and instinctively reached out to take hold of Mrs. Robertson and prevent her impending fall. She was totally unaware of the presence of the rugs before the accident.
*541 While there is some vagueness in her testimony regarding the exact location of the rugs, the thrust of her evidence is that she did not observe the rugs and did not believe they were stacked in an open area where they were plainly visible as testified by defendants' witnesses.
While there is understandably some slight variances in the testimony of defendants' witnesses, Gaspard, Soileau and Hollier, in effect said witnesses testified the rugs were stacked or piled in the "room" in an open area with at least two to four feet clearance on all sides. The substance of their testimony was further that the rugs were intentionally so placed in order that customers could readily walk completely around them for purposes of examination and inspection. According to defendant's said witnesses, the rugs were set near the center of the "room" with adequate walking space all around and there was no reason why they could not and should not have been observed by a person exercising ordinary diligence and care. Defendant's witness Soileau, however, testified that the distance from which the rugs could be seen would to some extent depend upon the direction from which the rugs were approached.
The trial court reached the conclusion that the position of the rugs as testified to by Mrs. Robertson was the most plausible under the circumstances. In so finding, he relied not only upon the evidence of Mrs. Robertson but also that of Soileau who stated the distance from which the obstacle could be seen would to some measure depend upon the direction from which the rugs were approached. In this connection he rightly observed that neither Mrs. Robertson nor Mrs. Callais were certain as to the exact direction in which they were proceeding at the time but that Mrs. Robertson was certain the rugs were obscured by a couch. While the trial court did not question the integrity of defendant's witnesses, he nevertheless observed it would be most difficult for them to recall the precise location of each piece of furniture in the ten month period intervening between the accident and trial considering the admittedly crowded condition of the store and the added circumstances that during the lengthy sale, furniture was constantly being moved in and out and rearranged on the floor as individual items were sold and delivered to purchasers.
We are not unmindful of the rule that in a case of this nature, plaintiff bears the burden of proving his case by a fair preponderance of evidence. Allen v. Honeycutt, La.App., 171 So.2d 770.
Contemplating the testimony mentioned and the additional fact that we are impressed with the apparent sincerity and forthrightness of the evidence given by Mrs. Robertson, we conclude the present case to be the classic example for invocation of the well established rule that empirical determinations by the trier of fact will not be disturbed unless shown by the record to be erroneous. Not only do we fail to find error on the part of the trial court in so concluding, we are disposed to reach the same conclusion from our independent review of the record herein.
Before considering plaintiffs' claims for increased quantum, we acknowledge applicability of the rule announced in Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149, and reiterated in Ballard v. National Indemnity Company, 246 La. 963, 169 So.2d 64, to the effect that trial courts possess great discretion in awarding damages for personal injuries and such awards should not be disturbed on appeal except in instances disclosing an abuse of such discretion.
Dr. J. Willard Dowell, Orthopedic Surgeon, attended Mrs. Callais following her injury. He diagnosed the patient's injuries as a fracture of the right fibula, just above the ankle. The affected member was first placed in a cast extending from the toes to just below the knee which cast was replaced on September 1, 1966 (approximately five weeks after the accident) by a shorter cast known as a "walking cast." *542 Mrs. Callais remained in the walking cast an additional three weeks following which she used crutches for an undisclosed period. Dr. Dowell considered the injury "painful" and on the date of trial (approximately ten months following plaintiff's injury) he had not yet discharged plaintiff. As of trial date, Dr. Dowell still observed minimal swelling in the affected area accompanied by an approximate 10% Limitation of motion of plaintiff's right ankle which condition he felt would continue although he was not certain it would be permanent. At the time of trial Dr. Dowell also noted plaintiff was experiencing some difficulty with her left foot in the form of pain and swelling. This condition Dr. Dowell attributed to the accident and the natural tendency of a patient to favor an injured member by imposing a greater burden on a sound limb. Again, although he was not certain the difficulty with plaintiff's left leg would be permanent, he was of the opinion it would persist. Based on his knowledge of the duties required of a registered nurse, Dr. Dowell expressed the view that plaintiff's ability to do private duty was impaired to some extent, especially because her ankle was prone to swell and might do so indefinitely. Because of this circumstance, Dr. Dowell stated plaintiff would experience discomfort and difficulty if required to stand on her feet for extended intervals or do considerable walking.
Plaintiff herself testified her ankle still ached daily and at the end of each day's work would swell considerably. Prior to the accident, she had regularly performed day duty in hospitals but had since been limited to night duty about three nights per week. She explained that the change was necessary because of the extra walking demanded of a day duty nurse who was required to attend to or supervise the bathing and feeding of patients, administer medication, assist doctors in giving treatments and receive and dispose of supplies, all of which duties were discharged primarily by the day shifts. Her testimony is unimpeached to the effect that she has lost an undetermined amount of income because of her ability to work only three nights weekly. She also stated she is unable to do private nursing duty because of the increased amount of walking and standing required. She is unable to wear high heeled shoes. She now limps and is not as agile as before the accident. To brace her ankles she wears special support shoes but even so, her feet ache and sweel so that after three nights work a week, she must rest to recuperate.
Considering the effects of plaintiff's injuries have persisted as shown and are likely to continue indefinitely into the future, we conclude the award of $3,500.00 for pain and suffering is grossly inadequate and should properly be increased to the sum of $6,500.00 prayed for.
Although plaintiff husband prays for an increase in the award for special damages to cover future medical expense, the record fails to contain even an estimation of the probable cost thereof. Under such circumstances, we are unable to grant the requested increase prayed for with regard to this item.
Accordingly, it is ordered, adjudged and decreed the award of the trial court in favor of plaintiff Elizabeth Miller Callais, against defendants, Furniture Showrooms, Inc. and Hartford Accident & Indemnity Company, be and the same is hereby amended by increasing said award from the sum of $3,500.00 to the amount of $6,500.00. It is further ordered, adjudged and decreed that, except as herein specifically amended, the judgment of the trial court is affirmed, all costs of this appeal to be borne by defendants, Furniture Showrooms, Inc. and Hartford Accident & Indemnity Company, in solido.
Amended and affirmed.