260 So.2d 15 (1972)
Melba C. HEBERT, w/o and Henry P. Hebert and Mt. Beacon Insurance Company
v.
Randolph PERKINS.
Emma Lee JACKSON
v.
Henry P. HEBERT and Randolph Perkins.
Nos. 4710, 4711.
Court of Appeal of Louisiana. Fourth Circuit.
March 21, 1972.
*16 Schaefer & Cocke, Alexander C. Cocke, Jr., New Orleans, for plaintiffs-appellants and defendants-third-party plaintiffs-appellees.
Schroeder, Kuntz & Miranne, Herman M. Schroeder, New Orleans, for plaintiff-appellant.
Neville M. Landry, Asst. Atty. Gen., James R. Conway, III, Metairie, for intervenor-appellee.
Randolph Perkins, pro se.
Before REDMANN, LEMMON and GULOTTA, JJ.
*17 REDMANN, Judge.
These consolidated cases include a demand for damages by Emma Lee Jackson, a passenger in a car operated by Randolph Perkins, against Perkins and Henry P. Hebert, the operator of a second car with which the Perkins car collided. Hebert and his wife (and their subrogated uninsured motorist insurer) sued Perkins for their damages, and third-partied Perkins in the Jackson suit. Charity Hospital intervened in the Jackson suit for its hospital treatment of Mrs. Jackson's injuries.
The trial court dismissed all demands. Only the Heberts and their insurer and Mrs. Jackson appealed.
Appellants do not dispute the factual findings of the trial court, but complain that it erred in excusing Perkins' alleged negligence (running a red light) on "an extension of the rescue doctrine and good Samaritan rule", deriving its principle from Gambino v. Lubel, 190 So.2d 152 (La.App.1966), writs refused 249 La. 834, 191 So.2d 639, 249 La. 837, 191 So.2d 640 and 249 La. 843, 191 So.2d 642; Callais v. Furniture Showrooms, Inc., 213 So.2d 537 (La.App.1968) and Chastain v. Allstate Ins. Co., 212 So.2d 243 (La.App.1968).
The facts are largely undisputed. Mrs. Jackson became dizzy after drinking a soft drink in a bar and fell. Bystanders believed she might have had a heart attack, and Perkins, as a kindness, undertook to drive her to the hospital (with other people in the car). Driving downriver on Loyola Avenue at 30 mph (or more), allegedly blowing his horn and displaying a white handkerchief held in his left hand, he drove through a traffic signal proven to have been red by the testimony of Hebert and of a disinterested eye witness who had been stopped for the red light and saw Perkins pass her. The investigating police officer testified that Perkins then admitted the light had changed to red when Perkins was still more than 100' from the intersection. Perkins said there were "a couple" of cars stopped or stopping in the left lane while he was travelling in the center lane. He testified at trial that the light had been green and had only turned yellow, and one passenger in this car also testified it was yellow. ("To me, it was yellow * * * when we was first coming it was red, but after it turned yellow.") Hebert had been driving upriver on Loyola and made a left turn on Howard Avenue on a green light through the curved roadway crossing the Loyola neutral ground, and his car struck Perkins' in its left side.

Liability
We have great sympathy for Perkins. His actions had the highest of human motivation, namely to help another person who needed aid. But there are limits to beyond-the-law acts of a rescuer which may be justified on the theory that the legislature does not intend to hinder the rescue of a person in danger. Perkins apparently realized this when he kept his speed to a reasonable limit despite his fear his ill passenger was dying; he realized, for example, that he could not drive 100 mph.
It appears to us, from the cases cited above, that the rescuer is only excused from such oversights or imprudences as the situation requiring rescue might reasonably have caused.
Thus, in Gambino, with traffic noises present and because of his concern for the obviously ill driver of the parked car, the rescuing police officer did not realize the new Cadillac's engine was running and so did not turn it off (which could have prevented the diabetically-comatose driver-plaintiff's then involuntarily hitting the accelerator, causing damage).[1]
*18 In Chastain, the rescuer placed his car at the top of an overpass crest, with blinking signal light, to warn coming motorists of a collision just over the crest and to render assistance to those involved in the first collision. Although it was argued his action violated the highway regulatory law, he was held not contributorily negligent in the accident resulting from another car driver's not seeing the rescuer's car timely, and not slowing despite sub-freezing temperature and sleet which caused ice on the overpass.
In Callais, plaintiff reacted to a pregnant friend's falling by quickly reaching to assist her, and in so doing herself fell because she tripped on a pile of rugs she should (possibly) under normal circumstances have seen.
We view the ultimate test to be that of the reasonable man, and, in our context, the test is that of the reasonable rescuer under the prevailing circumstance. We cannot accept running a red light at 30 mph as the act of a reasonable rescuer.
R.S. 32:24 allows an authorized emergency vehicle to pass on a red light "only after slowing down or stopping as may be necessary for safe operation", but still obliges the driver "to drive with due regard for the safety of all persons". An authorized emergency vehicle driver who unreasonably runs a red light while on an emergency mission is held liable; Powell v. Allstate Ins. Co., 233 So.2d 38 (La.App.1970).
As in Chastain, we might disregard the mere technical violation of the red-light-stop law, and perhaps consider this view as an "extension" of R.S. 32:24. Applying favorably to Perkins the extension of R.S. 32:24, he owes at least the standard of care required of emergency vehicles equipped with flashing lights and sirens. We can find no excuse for the imprudent speed at which Perkins drove through, neither slowing nor stopping. Although his motives were laudable, his behavior even under the circumstances was not reasonable. It was not a reasonable performance of his duty towards Mrs. Jackson, and much less towards the Heberts.
While Mrs. Jackson argues Hebert was concurrently negligent, we are unable to reverse the trial court's finding to the contrary. He was proceeding at a reasonable speed of 20 to 25 mph, had a green light, and proceeded through it. At least one car (that of a witness) was already stopped for the red light which Perkins should have obeyed, and Perkins was doubtless some distance (100' or more) from the intersection as Hebert neared it and proceeded through. We find nothing unreasonable, and thus no negligence, in Hebert's driving.

Quantum
Mr. Hebert suffered a black eye, for which we believe $100 is adequate general damages. Stipulated medical expenses for him and Mrs. Hebert totalled $147.70. Mrs. Hebert's lost wages were $173. His total quantum would be $420.70, but for his subrogation in favor of his uninsured motorist insurer, which we take to have included all specials, or $320.70.
Mrs. Hebert's injury was diagnosed as a moderate cervical strain, treated with analgesics, muscle relaxant and five diathermy treatments. She was discharged by her physician 16 days after the accident. We deem $750 appropriate general damages. Of that amount we believe $252 is due to the insurer under its subrogation for $572.70.
Mrs. Jackson's injuries were diagnosed as subluxation of cervical vertebra C-5 upon C-6, requiring surgical fusion and a hospital stay of 62 days, during a major part of which time traction was applied through a plate screwed to her skull. Thereafter she had to wear a neck brace for some time (she estimated almost a year). (She also had other complaints which are not related by medical evidence *19 to the accident.) We conclude $15,000 for general damages is appropriate, and add the hospital bill of $2,776.80.

Decree
The judgment appealed from is affirmed insofar as it rejected claims against Hebert, and is in part reversed, and there is now judgment in favor of Henry P. Hebert for $100, Mrs. Melba C. Hebert for $498, Mt. Beacon Insurance Company for $572, and Mrs. Emma Lee Jackson for $17,776.80, all against Randolph Perkins, and all with legal interest from demand and costs.
NOTES
[1] The entire discussion was perhaps unnecessary to the decision, since plaintiff was held the principal cause through his "gross" negligence in not stopping his car earlier and taking a soft drink or candy bar he kept for the purpose when he felt the spell coming, miles before.