346 So.2d 748 (1977)
George W. MILLER, Jr.
v.
Thomas L. CARTER et al.
No. 11246.
Court of Appeal of Louisiana, First Circuit.
May 9, 1977.
Rehearing Denied June 13, 1977.
*749 George W. Weber, New Orleans, for plaintiff-appellant.
France W. Watts, III, Franklinton, for defendants-appellees.
Before LANDRY, EDWARDS and COLE, JJ.
EDWARDS, Judge.
This suit arose out of a rear-end collision on the Lake Pontchartrain Causeway Bridge. After trial on the merits, the trial court found that the plaintiff was contributorily negligent and dismissed his suit. From this judgment, plaintiff has appealed. We affirm.
At the time of the accident, plaintiff, George W. Miller, Jr., was a practicing attorney who lived in St. Tammany Parish and commuted daily across the Causeway to his office in New Orleans.
The Causeway consists of twin, parallel, two-lane bridges, approximately twenty-four miles long. On one bridge traffic flows north; on the other traffic flows south. Neither bridge has a pull-over, or shoulder-type lane. There are seven "cross-over" connections between the two bridges which can be used for turn arounds, emergency stopping or repairs. Additionally there are several rises or humps in the bridge to facilitate boat traffic under the bridge.
The accident occurred on December 26, 1972, between 8 a.m. and 9 a.m. while Mr. Miller was traveling south. The weather was clear and the roadway was dry. Visibility was described as excellent.
As Miller passed cross-over No. 7, approximately three and one-half (3½) miles from the south terminus of the bridge, he observed a car parked in the cross-over with the trunk lid open and a man standing at the rear of the car looking north at the on-coming southbound traffic. Miller stated that he could not see what, if anything, was wrong with the car and that he did not see the man make any indication that assistance was needed.
*750 Nevertheless, Miller decided to render aid to the unknown man and brought his vehicle to a stop about 200 yards past the cross-over, activated his emergency flashing lights, checked his rear view mirror, and proceeded to back his vehicle toward the cross-over using the extreme right side of the right lane of traffic. There is a rise about one half of a mile north of the point where Miller stopped which restricted the view of approaching traffic. When he observed traffic coming over the rise, Miller stopped his vehicle, and three or four cars passed him using the left lane without incident. Thereafter, Miller again backed his car toward the cross-over until he noticed another car (belonging to Radcliff Materials, Inc. and driven by its employee Thomas L. Carter) coming over the rise in the righthand lane. Miller again stopped believing that this car would pass in the left lane. Instead, the Carter car continued in the right lane until it collided with the rear of the Miller car. Carter was driving the company car with the permission of, and in the course of his employment with, Radcliff.
This suit was brought by Miller to collect damages for personal injuries, lost wages and property damage against the driver, Carter; his employer, Radcliff; and its insurer, Travelers Insurance Company.
The trial court found that Carter was negligent, but that any claim against him was barred by Miller's contributory negligence.
Two issues are presented on appeal: (1) the contributory negligence vel non of Miller and (2) the applicability of the doctrine of last clear chance.
It is strenuously argued that Miller was not negligent in stopping on the traveled portion of the Causeway since his conduct was in technical compliance with LSA-R.S. 32:141.[1] This contention ignores the fact that criminal statutes are not, in and of themselves, definitive of civil liability, though they may form guidelines for the Court in fixing civil liability. Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821 (1971).
"The duty to refrain from parking on a highway is imposed as a safety measure in order to keep traffic arteries open. The obstruction of highways not only impedes passage, but also creates a risk that a confused or inattentive driver will collide with the stationary vehicle. The risk of harm created by a motorist's obstructing a highway imposes a reciprocal duty on motorists to refrain from doing so." Haas v. Southern Farm Bureau Casualty Insurance Company, 321 So.2d 380 (La.App. 4th Cir. 1975); writ refused La., 323 So.2d 133.
In the instant case, the evidence establishes that Miller passed six or seven signs, reading "no stopping except for repairs," along the Causeway on the morning of the accident. Additionally it was shown that the southern end of the bridge was clearly visible to him when he decided to aid the stopped motorist. Miller testified that he could not see if there was anything wrong with the car in the cross-over and that the unknown man gave no indication of needing assistance. The trial court concluded, based on these facts coupled with Miller's familiarity with the Causeway, that Miller was negligent, once having passed the cross-over, in stopping and backing up on the bridge, when he could have safely sought aid for the motorist at the south end of the bridge, 3½ miles away. We find that there is ample evidence in the record to support this conclusion. Canter v. Koehring Company, 283 So.2d 716 (La. 1973).
It is further contended that Miller's negligence should not bar his recovery since he occupied the status of a rescuer.
*751 The jurisprudence is clear that a rescuer is not barred by his contributory negligence from recovering for his injuries. Chastain v. Allstate Insurance Co., 212 So.2d 243 (La.App. 2nd Cir. 1968). However the rescuer is only excused from such oversights or imprudences as the situation requiring rescue might reasonably have caused. Hebert v. Perkins, 260 So.2d 15 (La.App. 4th Cir. 1972).
We are reluctant to find that Miller occupied the status of a rescuer in the instant case, since there were no circumstances indicating that immediate aid was needed. The facts of this case distinguish it from Chastain and other cases applying the rescuer doctrine since in the latter cases the existence of an emergency situation was apparent.
Regardless of whether or not we classify Miller as a rescuer, we are of the opinion that his negligence was not excused since it was not caused by the situation requiring rescue. Hebert v. Perkins, supra. The record is clear that the situation encountered by Mr. Miller presented no facts requiring immediacy of action. In fact, as previously stated, Miller was ignorant of whether or not his aid was needed at all. Accordingly, we believe that the rescuer doctrine does not, under these facts, provide Miller with relief from his contributory negligence.
It is also contended that Miller's negligence was merely passive in nature and therefore should not bar his recovery.
It is apparent that Miller's actions constituted a cause-in-fact of the accident, since had he not stopped on the bridge the accident would not have occurred. Additionally, though Carter was also negligent, the hazardous condition created by Miller's negligence continued to the moment of the accident, and the concurrent substandard behavior of both parties combined to bring about the collision. Therefore, we find that Miller's concurrent negligence was a cause in fact of the accident.
The second issue presented concerns the doctrine of last clear chance. The circumstances necessary for the application of the doctrine are set forth in Price v. Watts, 215 So.2d 187, 189 (La.App. 3rd Cir. 1968), as follows:
"Under this doctrine, a defendant motorist is liable for injury to a plaintiff, despite any contributory negligence on the latter's part, if an accident occurs when (1) the plaintiff was previously in a position of peril, of which he was either apparently unaware or else from which he could not extricate himself, (2) the defendant discovered, or could reasonably have observed, the plaintiff's danger and (3) thereafter, could have reasonably avoided the accident. See Belshe v. Gant, 235 La. 17, 102 So.2d 477; Jackson v. Cook, 189 La. 860, 181 So. 195; Rottman v. Beverly, 183 La. 947, 165 So. 153; Venero v. State Farm Mutual Auto Ins. Co., La.App. 3rd Cir., 196 So.2d 841."
The applicability of the doctrine is a question of fact and each case must turn upon its own facts. The plaintiff urges application of the doctrine to escape the harsh effects of his contributory negligence, and therefore must prove facts sufficient to avail himself of the beneficial effects of this doctrine.
The trial judge after an evaluation of all the facts decided against the plaintiff. There is ample evidence in the record to support this finding, and we therefore have no basis for reversal. Canter v. Koehring Company, supra.
It would appear that the first element of the doctrine is lacking in the present case. The record is clear that Miller was a seasoned traveler on the Causeway Bridge, having commuted daily to and from his office in New Orleans. It is inconceivable that such a person could be unaware of the peril in which he was placing himself by stopping and backing-up on the bridge. Further, we find that Miller could have easily extricated himself from this danger by continuing on the bridge to the south toll plaza, only 3½ miles away, and there requesting assistance for the motorist in cross-over No. 7. Therefore the doctrine *752 of last clear chance is inapplicable in the instant case.
While we are reluctant to penalize the good intentions exhibited by Miller, we feel that his conduct was such as to render him contributorily negligent in the automobile accident.
Therefore, for the reasons assigned, the judgment of the trial court is affirmed at appellant's cost.
AFFIRMED.
COLE, Judge, respectfully dissenting.
The doctrine of last clear chance is clearly applicable. The danger or peril in which plaintiff found himself arose only when the elements of time, speed and distance combined to render it impossible for the defendant driver to change lanes and thereby safely pass plaintiff's stopped vehicle. At that moment, plaintiff had no opportunity whatever to extricate himself from the peril.
NOTES
[1] LSA-R.S. 32:141 provides in pertinent part:

A. "Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway . . ."