355 So.2d 1335 (1978)
Percy A. CHAMPAGNE, Jr., Plaintiff-Appellant,
v.
Dorothy G. McDONALD, and Fireman's Insurance Company, State Farm Mutual Auto. Ins. Co., Intervenor, Defendants-Appellees.
No. 6267.
Court of Appeal of Louisiana, Third Circuit.
February 6, 1978.
Rehearing Denied March 29, 1978.
*1337 Domengeaux & Wright by Terry E. Theriot, Lafayette, for plaintiff-appellant Percy A. Champagne.
McBride & Brewster by Norman P. Foret, Lafayette, for intervenor State Farm Mutual.
Bean & Rush by Ernest L. Parker, Lafayette, for defendant-appellee Dorothy G. McDonald.
Allen, Gooch & Bourgeois, Ltd. by Randal K. Theunissen, Lafayette, for defendant-appellee Fireman's Ins.
Before GUIDRY, FORET, and JOHNSON, JJ.
GUIDRY, Judge.
The above numbered and entitled matter was consolidated for trial in the district court with Dorothy G. McDonald v. Percy A. Champagne, Jr., and State Farm Mutual Automobile Insurance Company, 355 So.2d 1345 (La.App. 3rd Cir. 1978), our docket number 6268. These cases remain consolidated on appeal and we decide both of these cases today. The facts and law are common to each case.
These suits have their common source in an intersectional collision between two vehicles in the City of Lafayette, Louisiana. The instant litigation is between the drivers of the vehicles and their insurers.
In suit number 6267, Percy A. Champagne, Jr. seeks to recover damages for personal injuries, medical expenses, lost wages and the $100.00 deductible under the terms of his insurance policy from Dorothy G. McDonald and her insurer, Fireman's Insurance Company, sustained as a result of the alleged negligence of Ms. McDonald. Percy Champagne's insurer, State Farm Mutual Automobile Insurance Company (State Farm), intervened in the suit seeking recovery of $2,201.78, said sum representing the amount paid to Champagne under the collision and medical payments provisions of its policy of insurance issued to him.
Suit number 6268 was brought by Dorothy McDonald in which she seeks recovery against Champagne and State Farm for personal injuries, medical expenses, loss of income and the amount of property damage to her automobile, unpaid by her insurer, sustained in the aforementioned collision as a result of the alleged negligence of Champagne.
After trial of these consolidated cases, the trial court found negligence on the part of each driver, said negligence constituting a proximate cause of the accident. Accordingly, judgment was rendered in each suit dismissing plaintiffs' petitions along with all incidental actions.
Both Champagne and McDonald have perfected appeals from the adverse judgments of the trial court and State Farm has answered these appeals, seeking recognition of its intervention.
The principal issues presented on appeal are:
(1) Was McDonald guilty of negligence which was a proximate cause of the accident?
(2) Was Champagne guilty of negligence which was a proximate cause of the accident?
*1338 The record in this case establishes the following facts:
The collision occurred at approximately 3:54 A.M. on the morning of October 10, 1974 at the intersection of Southwest Evangeline Thruway and Jefferson Street in the City of Lafayette, Louisiana. The vehicles involved in the accident were a 1974 Ford automobile being operated in a southerly direction on the Evangeline Thruway by McDonald, and a 1972 Chevrolet pickup truck being operated in an easterly direction on Jefferson Street by Champagne. At the intersection, Evangeline Thruway is a multi-lane highway, consisting of three lanes of travel in a southerly direction. Jefferson Street is a four-lane highway running generally east and west, with two lanes of travel in each direction. At the time of the accident, traffic traversing the above intersection was controlled by a semaphoric traffic signal suspended above the center of the intersection. Posted speed limits at the time of the accident were 40 mph for the Thruway and 30 mph for Jefferson Street. Weather conditions were described as clear and dry. The intersection received illumination from street lights and other sources. The record reveals no visual obstructions which would seriously interfere with traffic attempting to negotiate the intersection.
In order to fully comprehend the sequence of events leading up to the accident, it is necessary to describe the intersections encountered by McDonald immediately prior to the accident. A driver traveling south on Southwest Evangeline Thruway will encounter the intersections of Mudd, Simcoe and Third Streets immediately before reaching the Jefferson Street intersection. These intersections are all controlled by semaphoric traffic signals. The normal operating sequence of these signals was "green-caution-red-green."
At the time of the accident, McDonald was employed at Lafayette General Hospital as a respiratory technician. In the early morning hours of October 10, 1974, she was summoned by an emergency call to attend to an infant who was being brought to the hospital with a respiratory difficulty. She left her home and proceeded to the hospital, traveling south along the Southwest Evangeline Thruway.
While on patrol that morning, Officer Kenneth Holleman of the Lafayette City Police Department observed the McDonald vehicle heading south on the Evangeline Thruway at an excessive rate of speed. He clocked her speed at between sixty and seventy mph. After observing her vehicle run the red light at Mudd Street intersection, he stopped her just prior to the Simcoe Street intersection which was approximately three blocks from the accident. She got out of her car and had a conversation with Officer Holloman in which he learned that she was on an emergency call to Lafayette General Hospital. Officer Holleman observed that the emergency flashers on her vehicle were in operation at this time. He gave her a verbal warning and allowed her to proceed. They both reentered their automobiles whereupon McDonald approached the Simcoe Street intersection, looked both ways, and proceeded through said intersection in violation of a red traffic light then facing her lane of travel. Officer Holleman observed the traffic signal at the next intersection (Third Street) turn red as she approached that intersection. He observed her brake lights come on momentarily and then go off again. At this point, he turned off Southwest Evangeline Thruway and lost sight of the McDonald vehicle.
The evidence then indicates that the McDonald automobile converged on the Jefferson Street intersection traveling in the far right lane of the Thruway at approximately the same time as the truck being driven in an easterly direction on Jefferson Street by Champagne.
Champagne is employed as a Deputy Sheriff for St. Martin Parish. On the afternoon prior to the accident, he had attended a fish fry at the Evangeline State Park in St. Martinville, Louisiana, being given by the St. Martin Parish Sheriff's Department as a celebration for those persons passing a refresher course. He arrived at this function at 7:30 or 8:00 P.M. that *1339 evening and stayed until around a quarter to twelve. Champagne testified that he did not consume any alcoholic beverages while at the celebration.
He left the Park alone and drove to the Shangri-La Lounge on La. 94 where he consumed one 10 ounce can of beer. He then proceeded to Fontenot's Lounge in Lafayette where he was to meet some friends. He played pool most of the time there and consumed a total of three cans of beer. His friends never did arrive, so he left Fontenot's Lounge and headed back towards his home in Breaux Bridge. He denied stopping at any other establishments. After leaving Fontenot's, Champagne traveled along a route which took him to Jefferson Street. He entered Jefferson Street and turned toward the Evangeline Thruway intersection, traveling in the inner (left) lane of the highway.
The record does not clearly establish which vehicle entered the intersection first, although it is clear from the evidence that the vehicles entered the intersection almost simultaneously. The McDonald vehicle swerved to the left as she attempted to take evasive action to avoid the collision. The front of the Champagne vehicle struck the right (passenger) side of her automobile, with the point of impact occurring in the far left lane of the Thruway at a point approximately in the center of the outer (right) lane of Jefferson Street.
McDonald testified that after the initial impact, the wheels on her vehicle became locked and the accelerator either became stuck or depressed, causing her vehicle to continue in a large curving path to the right striking a building, a billboard and some gas pumps. The McDonald vehicle traveled a total distance of 320' ten inches from the point of impact to its final resting place. Her car ended up on the west side of the Thruway, facing northeast. Champagne was thrown from his vehicle, which came to rest on Jefferson Street between the two Thruways, facing the Southwest Thruway.
Officer Robert Johnson of the Lafayette Police Department drove upon the accident moments after it occurred and assumed command as the investigating officer. He was aided in his investigation by Officer Holleman who responded to his radio call for assistance.
While at the scene of the accident, Officer Johnson detected a moderate odor of alcohol coming from Champagne. Approximately one hour after the accident, while at Lafayette General Hospital, Champagne consented to have a blood sample taken from him. An analysis of this blood sample later indicated a blood alcohol content of .13.
There were no witnesses to the accident other than the two drivers.
The trial judge, in written reasons, concluded that McDonald was driving with her emergency flashers on and was traveling at a high rate of speed and proceeded through the intersection under a red light in an attempt to beat Champagne across the intersection. The trial judge also found that Champagne was driving under the influence of intoxicants and was negligent in not seeing McDonald with her emergency blinkers on. Accordingly, both suits were dismissed with prejudice, along with the intervention of State Farm.

NEGLIGENCE OF MCDONALD
At the outset, we note that at the trial of this case testimony pertaining to the manner in which McDonald was operating her automobile immediately prior to the accident was received in evidence over the objection of McDonald's counsel. In his brief to this Court, her counsel contends that the trial court committed error in receiving this evidence, urging that assuming her conduct to be traffic violations, evidence of prior criminal acts (other than convictions) is not admissible. He contends that testimony concerning her driving conduct immediately prior to the accident should have been excluded.
We find no merit in this contention, as we conclude that evidence of McDonald's prior acts of driving was relevant and competent and thus properly admissible.
*1340 While negligence may not be established by proof of an act of prior negligence, Sullins v. City of Shreveport, 229 So.2d 390 (La.App. 2nd Cir. 1969), we feel that McDonald's prior conduct is so closely related both in time and place to her alleged negligent conduct (traveling at a high rate of speed and running the red light at the Jefferson Street intersection) as to constitute a part of a continuous sequence of events which culminated in the accident. In 65A C.J.S. Negligence § 226, we find the following pertinent language:
"Evidence tending to show the actions and conduct of the person charged immediately prior to, and at the time of, the alleged negligent act is competent and admissible, provided it was part of the same transaction as that which resulted in the accident or injury complained of; but proof of prior misconduct, unrelated to the accident in issue, is inadmissible.
In other words, evidence of conduct prior to an accident is usually admissible if it is not too remote in point of time and space, and is of such a nature that an inference may reasonably be drawn that it continued until the point of the accident, or is of such a nature as to explain or characterize the conduct of a party as shown by the evidence."
At trial, an issue arose as to who had the green light upon entering the intersection. McDonald's testimony that she was favored by the green light was directly contradicted by Champagne's testimony and is inconsistent with statements allegedly made by her at the scene of the accident to the effect that she entered the intersection under a caution light in an attempt to beat Champagne across. The trial judge resolved this factual issue in favor of Champagne. We find no manifest error in his conclusion that McDonald proceeded through the intersection in violation of a red light and that such conduct was a proximate cause of the collision which ensued.
The depositions of Officers Holleman and Johnson were introduced at trial in lieu of their actual testimony. Officer Holleman's testimony that he observed the light at the Third Street intersection turn red as McDonald approached said intersection was corroborated by McDonald's own testimony that the light was red for her when she got to Third Street. He saw her brake lights come on momentarily, but does not know whether she stopped for the intersection or not, as he lost sight of her vehicle. McDonald testified that she did stop at the Third Street intersection, although she doesn't know the color of the light when she proceeded from the intersection.
Officer Johnson testified that he timed the traffic lights on the Thruway four times that night for his report, and found that the lights were synchronized in such a manner that the light at Jefferson Street will turn red four seconds after the light at Third Street turns red.
Officer Holleman had patrolled that area for almost two years. He testified that if McDonald went through the light when it was red at Third Street, and proceeded at a normal rate of speed, the light would be definitely red at Jefferson when she arrived there.
The record indicates that McDonald had run at least two red lights prior to the accident and that she had been disregarding speed and traffic regulations in her haste to reach the hospital as soon as possible. Apparently the trial judge concluded that she continued operating her vehicle in such a manner as she left the Third Street intersection and passed from Officer Holleman's field of vision. This being considered, along with testimony regarding the synchronization of the traffic signals and the four second delay in the light change sequence from Third Street to Jefferson Street, it logically follows that McDonald encountered a red light as she approached the Jefferson Street intersection. Considering her conduct at the previous intersections and her motives for driving in such manner, we will not disturb the trial judge's findings that she proceeded into the Jefferson Street intersection under a red signal. Reasonable factual conclusions of the trial court should not be disturbed in the absence of manifest error. Canter v. Koehring, 283 So.2d 716 (La.1973).
*1341 Having found negligence on the part of McDonald, we next consider the contention of her counsel that she should be exonerated from negligence because of her status as a "rescuer".
We need not determine whether McDonald enjoyed the status of a rescuer as she rushed to the hospital, as we conclude that her conduct under the circumstances would not be excused even if we found the "rescue doctrine" applicable to the instant situation.
While rescuers are favored by our law, Lynch v. Fisher, 41 So.2d 692 (La.App. 2nd Cir. 1949); Gambino v. Lubel, 190 So.2d 152 (La.App. 4th Cir. 1966, writs refused); Chastain v. Allstate Insurance Company, 212 So.2d 243 (La.App. 2nd Cir. 1968), the law also establishes limits beyond which even a rescuer's substandard conduct will no longer be tolerated. In Hebert v. Perkins, 260 So.2d 15 (La.App. 4th Cir. 1972), defendant, sounding his horn and displaying a white handkerchief, was involved in a collision when he ran a red light at thirty mph while rushing an apparent heart attack victim to the hospital. The court found liability on the part of defendant, stating:
"But there are limits to beyond-the-law acts of a rescuer which may be justified on the theory that the legislature does not intend to hinder the rescue of a person in danger.
* * * * * *
We view the ultimate test to be that of the reasonable man, and, in our context, the test is that of the reasonable rescuer under the prevailing circumstance. We cannot accept running a red light at 30 mph as the act of a reasonable rescuer."
While we realize the urgency of the situation which faced McDonald and can appreciate her desire to get to the hospital as soon as possible, we cannot accept her conduct in entering an intersection at a high rate of speed under a red light without first ascertaining that favored traffic was aware of the situation and would yield the right of way as that of a reasonable rescuer under the circumstances. Her conduct simply goes beyond that which the law will permit in its desire to favor those persons who render aid to a helpless victim.
We likewise reject the contention that the provisions of LSA-R.S. 32:24[1] should be extended to this situation so as to relieve McDonald of "a technical violation of the red light stop law". This statute allows an authorized emergency vehicle to proceed past a red light after slowing down or stopping as may be necessary for safe operation. Although admittedly she was not driving an authorized emergency vehicle, it is argued that the provisions of R.S. 32:24 should apply in this situation, as she was en route to Lafayette General Hospital on an emergency call with her emergency lights flashing.
*1342 Even if we were to sanction such a judicial extension as suggested by counsel, we find that the provisions of R.S. 32:24, would not relieve McDonald of her negligence. By its own terms, the statute imposes a duty on the driver of such vehicle to drive with due regard for the safety of all persons. A breach of this duty will result in a finding of negligence on the part of the driver. Fleming v. State Department of Hospitals, 308 So.2d 366 (La.App. 1st Cir. 1975, writ refused); Carpenter v. Hartford Accident & Indemnity Co., 333 So.2d 296 (La.App. 1st Cir. 1976); Weber v. State Farm Mutual Automobile Insurance Company, 347 So.2d 336 (La.App. 4th Cir. 1977); Bergeron v. Port Allen Mortuary, Inc., 178 So.2d 442 (La.App. 1st Cir. 1965, writ refused).
Thus, even if we apply the provisions of R.S. 32:24 to McDonald, she still owes at least the standard of care required of emergency vehicles equipped with flashing lights and sirens. Hebert v. Perkins, supra. In Fleming v. State Department of Hospitals, supra, an ambulance driver with emergency lights and siren in operation attempted to negotiate an intersection in the face of a red light by slowing almost to a stop before proceeding to cross. He was found to have been negligent in failing to see an oncoming vehicle which struck his ambulance.
For all of the above reasons we find that the trial court correctly concluded that McDonald was negligent and such negligence was a proximate cause of the accident.

NEGLIGENCE OF CHAMPAGNE
Before addressing the issue concerning Champagne's contributory negligence, we deem it appropriate to first consider an evidentiary ruling made by the trial court which is alleged by McDonald to be erroneous.
At trial, McDonald offered to prove that a blood test taken from Champagne approximately one hour following the accident and analysis thereof showed a blood alcohol content of .13. She also offered to prove through the testimony of expert witnesses the effect of such a blood alcohol content on the ability of one to drive. The trial court disallowed any evidence in regard to the results of the aforesaid blood test and the testimony concerning the effect of such a blood alcohol content on one's ability to drive on the grounds that the admissibility of the above in civil proceedings is prohibited by the provisions of LSA-R.S. 32:662.[2]
We conclude that the trial court erred in its refusal to allow the admission of such evidence. R.S. 32:662 only proscribes the use of the "presumptions" contained therein in civil proceedings and in no way prejudices the right of a civil litigant to *1343 introduce evidence of a person's blood alcohol content and to have competent expert witnesses interpret the effects of such on a person's ability to operate a motor vehicle. Brown v. Collins, 223 So.2d 453 (La.App. 3rd Cir. 1969). See also Bradley v. Allstate Insurance Co., 307 So.2d 132 (La.App. 1st Cir. 1974, writ refused); and Prestenbach v. Sentry Insurance Company, 340 So.2d 1331 (La.1976).
Although we conclude that the district court erred in refusing to admit such evidence, our careful examination of the record convinces us that this error was harmless, in that it is not shown that the intoxication of Champagne to the extent reflected by McDonald's offer of proof was a proximate cause of the accident.
We next consider whether Champagne was guilty of any other negligence, independent of his intoxication, which was a proximate cause of the accident. According to his version, as Jefferson Street approaches the Evangeline Thruway intersection, it dips down to form an underpass and then rises to again become level with surrounding streets. Champagne observed his speedometer upon exiting from the underpass and noted a speed of approximately twenty-five mph. He first saw the signal light at the intersection as he was coming from underneath the underpass to level ground, and observed that it was green. His testimony was to the effect that the light remained green from the time he came out from under the underpass to the time that he entered the intersection. He did not see the McDonald vehicle until it was approximately ten feet to his left, as his attention was directed at the traffic signal. Champagne candidly admitted that he did not check for traffic approaching the intersection on the Thruway. He had the green light and wasn't expecting to encounter another vehicle crossing the intersection from his side in violation of a red signal.
Able counsel for McDonald and Fireman's Insurance Company contends that the fact, standing alone, that Champagne did proceed on a green light is not sufficient to exonerate him from liability, relying on Denton v. Fontenot, 216 So.2d 310 (La.App. 3rd Cir. 1968). While we consider the decision in Denton, supra, to be based on sound legal principles, we find that case inapplicable to the case at bar because of certain distinguishing factual characteristics. In Denton, supra, a driver favored by a green light proceeded through an intersection, colliding with the fifth or sixth vehicle in a funeral procession. This Court concluded that the driver on the favored street was negligent in failing to maintain a proper lookout, finding that the fact that he had observed one car go through the red light, with another vehicle closely following should have caused him to suspect that a funeral procession was traversing the intersection.
However, in the instant case, Champagne was not aware of the presence of the McDonald vehicle until it became impossible for him to avoid the accident. Thus, any negligence on his part must be predicated on his failure to maintain a proper lookout as he proceeded through the intersection.
As aforesaid, the trial judge in written reasons, found Champagne's negligence to consist of his failure to see McDonald with her emergency flashers on. In making a determination as to whether or not his conduct under the circumstances constituted negligence, we must first define the degree of care required of Champagne as he entered the intersection favored by the green light.
A motorist approaching an intersection controlled by semaphore signals, who is favored by a green light, is entitled to assume that traffic approaching the intersection from either side on a red light will comply with the red light and respect his right-of-way. Bourgeois v. Francois, 245 La. 875, 161 So.2d 750 (La. 1964); Carter v. New Orleans Public Service, Inc., 305 So.2d 481 (La.1974). The favored motorist is not obligated to look to his left or right before entering the intersection, Correge v. Webb, 284 So.2d 355 (La.App. 4th Cir. 1973, writ refused); Bradley v. Allstate Insurance Co., supra; Keyser v. Triplett, 322 So.2d 294 (La.App. 1st Cir. 1975, writ refused); *1344 Welton v. Falcon, 341 So.2d 564 (La. App. 4th Cir. 1976, writs refused), and will be held accountable only if he could have avoided the accident with the exercise of the slightest degree of care and fails to do so. Bradley v. Allstate Insurance Co., supra; Bourgeois v. Francois, supra. All that is required is that the favored motorist maintain a general observation of the controlled intersection. Jordan v. Great American Insurance Company, 248 So.2d 363 (La. App. 4th Cir. 1971); Modica v. Manchester Insurance & Indemnity Co., 284 So.2d 791 (La.App. 4th Cir. 1973).
We thus conclude that as Champagne proceeded under the green light, he had a duty to maintain a general observation of the intersection, and to observe other traffic approaching him from his front, but not to be alert to the possibility of vehicles violating the red light from either side.
The record in the instant case is barren of any evidence with which we could conclude that Champagne should have seen the McDonald vehicle prior to its entry into the intersection, and we find no evidence indicating that he was not exercising the degree of care required of him as he proceeded through the intersection. Accordingly, we find manifest error in the trial court's conclusion that Champagne was negligent in failing to see the emergency blinkers on the McDonald vehicle.
Considering the foregoing, we find without merit the contention of McDonald that Champagne had the last clear chance to avoid the collision. The doctrine of last clear chance is only applicable when both parties have been found to be guilty of negligence which was a proximate cause of the accident. Mitchell v. Sigrest, 345 So.2d 141 (La.App. 1st Cir. 1977).

QUANTUM
We must next determine the amount of damages to which Champagne is entitled.
As a result of the accident, Champagne was hospitalized at Lafayette General Hospital with multiple contusions and abrasions on his body. X-rays revealed no evidence of fractures, and he was released the following day. These injuries seemed to have been relatively minor, as they resolved themselves in three to four weeks, with the exception of chest pains which continued for about five months.
He was subsequently treated by Dr. Ernest Yongue for complaints of chest pain consisting of subjective complaints of pain and tenderness in the area around the sternum. His condition was diagnosed by Dr. Yongue as a contusion of the chest with possible fracture of the left fifth and sixth costochondral cartilages, along with a depressive reaction. His treatment consisted of mild sedatives and use of heat treatments. He was later placed on an antidepressant drug.
Champagne continued to receive his regular salary after the accident and is thus not entitled to any recovery for lost wages.
Considering the above, we conclude that the sum of $3500.00 in general damages will adequately compensate Champagne for his personal injuries sustained in the accident. He is also entitled to recover the amount of his property damage which consists of the $100.00 deductible amount under his insurance policy. By virtue of the subrogation receipt filed in evidence, Intervenor, State Farm, is entitled to recover the sum of $2,201.78 representing payments made to Champagne under its policy of insurance.
For the above and foregoing reasons, the judgment of the district court dismissing Champagne's suit against McDonald and Fireman's Insurance Company is reversed. Accordingly, it is ordered, adjudged and decreed that there be judgment in favor of Percy A. Champagne, Jr. in the sum of $3600.00 against Dorothy G. McDonald and Fireman's Insurance Company in solido, with legal interest from date of judicial demand. It is also ordered, adjudged and decreed that there be judgment in favor of State Farm in the sum of $2,201.78 against Dorothy G. McDonald and Fireman's Insurance Company in solido, with legal interest from date of judicial demand.
*1345 Costs both at the trial level and on appeal are to be borne by defendants.
REVERSED AND RENDERED.
NOTES
[1] LSA-R.S. 32:24 provides as follows:

"A. The driver of an authorized emergency vehicle, when responding to an emergency call, or when in the pursuit of an actual or suspected violator of the law, or when responding to, but not upon returning from, a fire alarm, may exercise the privileges set forth in this Section, but subject to the conditions herein stated.
B. The driver of an authorized emergency vehicle may:
(1) Park or stand, irrespective of the provisions of this Chapter;
(2) Proceed past a red or stop signal or stop sign, but only after slowing down or stopping as may be necessary for safe operation;
(3) Exceed the maximum speed limits so long as he does not endanger life or property;
(4) Disregard regulations governing the direction of movement or turning in specified directions.
C. The exceptions herein granted to an authorized emergency vehicle shall apply only when such vehicle is making use of audible and visual signals sufficient to warn motorists of their approach, except that a police vehicle need not be equipped with or display a red light visible from in front of the vehicle.
D. The foregoing provisions shall not relieve the driver of an authorized vehicle from the duty to drive with due regard for the safety of all persons, nor shall such provisions protect the driver from the consequences of his reckless disregard for the safety of others."
[2] LSA-R.S. 32:662 provides as follows:

"A. The chemical test or tests as provided for by this Part shall be subject to the following rules and shall be administered as provided for hereafter:
1. Upon the trial of any criminal action or proceeding arising out of acts alleged to have been committed by any person while driving or in actual physical control of a vehicle while under the influence of alcoholic beverages the amount of alcohol in the person's blood at the time alleged as shown by chemical analysis of the person's blood, urine, breath or other bodily substance shall give rise to the following presumptions:
a. If there was at that time 0.05 per cent or less by weight of alcohol in the person's blood, it shall be presumed that the person was not under the influence of alcoholic beverages.
b. If there was at that time in excess of 0.05 per cent but less than 0.10 per cent by weight of alcohol in the person's blood, such fact shall not give rise to any presumption that the person was or was not under the influence of alcoholic beverages, but such fact may be considered with other competent evidence in determining whether the person was under the influence of alcoholic beverages.
c. If there was at that time 0.10 per cent or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of alcoholic beverages.
B. Percent by weight of alcohol in the blood shall be based upon grams of alcohol per one hundred cubic centimeters of blood.
C. The foregoing provisions of this section shall not be construed as limiting the introduction of any other competent evidence bearing upon the question whether the person was under the influence of alcoholic beverages.
This section has no application to a civil action or proceeding."