MARVIN, Judge.
Gabel, a motorcyclist who collided with defendant’s automobile at a Shreveport intersection during the predawn hours on a Sunday morning, appeals a judgment rejecting his demands for personal injury and property damages.
Gabel contends the trial court erred in admitting what was a “settlement” agreement that he later executed which obligated him to pay for the damage done to defendant’s automobile and that the trial court was clearly wrong in finding him solely at fault.
We agree that the settlement agreement (actually Department of Public Safety Form SR 19 which Gabel executed to keep his driver’s license) was in the nature of a compromise and should not have been admitted. Nonetheless, we do not find that it was considered by the trial court as an admission of liability or that it otherwise prejudiced Gabel. Broussard v. State Farm Mutual Automobile Insurance Company, 188 So.2d 111 (La.App. 3d Cir. 1966).
From this record we cannot find that the trial court was clearly wrong in its holding that Gabel was solely at fault and we affirm the judgment.
FACTS
The accident occurred in November 1981 at the intersection of Market and Crockett streets in downtown Shreveport about 3:00 a.m. A police officer for the Village of Blanchard was driving eastbound in the southernmost lane of Crockett Street. He was returning to Blanchard after booking a prisoner in the Caddo Parish jail. Gabel was southbound in the westernmost lane of Market Street. He and a friend, Edwards, had been drinking in the bars in Shreve Square for about three hours and were on their way home. Gabel said that he didn’t know how much he had to drink. On cross-examination, he admitted that he drank four to six beers.
The intersection was controlled by traffic lights. Both drivers claimed to have had the green light. The only eyewitness was Edwards, Gabel’s friend of the evening who was following Gabel in a pick-up truck one or two car lengths behind. Edwards acknowledged that he had also been drinking that evening. Edwards generally corroborated Gabel’s version of the accident.
Plaintiff contends that he was “timing the lights” on Market Street so that he would not have to stop and that the light at the Crockett Street intersection turned green just before he entered the intersection.
The traffic light custodian for the City of Shreveport testified that the lights on Mar *116 ket Street are set in sequence so that each light will turn green 13 seconds after the preceding light. The expert said that a motorist must average 19 miles per hour in order to make the green light at each intersection. The intersection at Milam immediately precedes the Crockett street intersection. Both Gabel and Edwards testified that Gabel entered the Milam-Market intersection about the time that light turned green.
Although Gabel testified he had the lights on Market Street “timed” so that he would not have to slow down or stop, he did not know the speed at which he would have had to travel in order to make the green light at the intersections ahead of him. Additionally, Gabel’s estimate of his speed at the trial was inconsistent with his pre-trial estimates made in a recorded statement and in a deposition. In a recorded statement taken two days after the accident, Gabel stated he was traveling about 35 miles per hour. In his deposition, plaintiff stated he was traveling “between 25 and 35 miles per hour”. At trial, he testified that he really didn’t know how fast he was going.
The trial court found that Gabel failed to prove the police driver was negligent and concluded that Gabel “tried to beat the changing of the light.” When these conclusions are weighed in the light of the police driver’s version which was accepted by the trial court over Gabel’s version, the trial court was not clearly wrong in its judgment. The police driver testified that as he approached and entered the intersection, the light facing him was green. For traffic proceeding easterly on Crockett, the intersection is effectively “blind” because the building on the northwest corner obscures vision from Crockett Street. The police driver and Gabel agreed that the police driver was driving slowly at all times. That driver testified that he was driving about 25 mph and did not see the motorcycle until it was right on him, a mere six or eight feet. He then applied his brakes and left about 35 feet of skid marks after impact.
Alternatively, Gabel argues that even if he entered the intersection on a red light, the defendant driver was still partially at fault. He contends that with the slightest care, defendant could have avoided the accident by the application of his brakes. In Ortigo v. Merritt, 488 So.2d 1051, 1054, (La.App. 2d Cir.1986), we said:
A driver entering an intersection controlled by a semaphore light system must pay attention to the light facing him. Bryant v. Ouachita Coca-Cola Bottling Company, 239 La. 83, 117 So.2d 919 (1960). The duty of a motorist at an intersection controlled by a signal when the indicator light facing him is green was stated by this court most recently in McCoy v. Chambers, 403 So.2d 838 (La.App. 2d Cir.1981): “A motorist approaching an intersection controlled by semaphore signals, who is favored by a green light, is entitled to assume that traffic approaching the intersection from either side on a red light will comply with the red light and respect his right of way ... The favored motorist is not obligated to look to his left or right before entering the intersection ... and will be held accountable only if he could have avoided the accident with the exercise of the slightest degree of care and fails to do so ... All that is required is that the favored motorist maintain a general observation of the controlled intersection ...” See also Champagne v. McDonald, 355 So.2d 1335 (La.App. 3d Cir.1978).
Under the circumstances of this record we cannot find that the trial court erred in absolving the police driver even of any “slight” fault.
Accordingly, and at appellant’s cost, we affirm the judgment.