394 So.2d 1178 (1981)
Roland PARKER
v.
KROGER'S, INC.
No. 67652.
Supreme Court of Louisiana.
January 26, 1981.
Rehearing Denied March 20, 1981.
Scofield, Bergstedt, Gerard, Hackett & Mount, Benjamin W. Mount, Lake Charles, for defendant-applicant.
D. Michael Mooney, Lake Charles, for plaintiff-respondent.
MARCUS, Justice.
Roland Parker brought this suit against his former employer, The Kroger Company, Inc. (erroneously referred to as Kroger's, Inc.) for workmen's compensation benefits for personal injury received by accident arising out of and in the course of his employment. Kroger answered generally denying the allegations of the petition and, further answering, alleged that no compensation should be allowed because the injury was caused by plaintiff's intoxication at the time of the accident. The trial judge found that defendant failed to meet the burden of proving plaintiff's intoxication at the time of the injury. Further finding that plaintiff sustained an injury producing temporary total disability, the trial judge rendered judgment in favor of plaintiff ordering defendant to pay $141.00 per week during the period of such disability plus medical expenses and costs. Penalties and attorney's fees were also awarded in the judgment. Defendant appealed. The court of *1179 appeal affirmed.[1] Upon defendant's application, we granted certiorari to review the correctness of that judgment.[2]
The record reveals that plaintiff had been employed by Kroger to drive 18-wheel trucks for its stores in Lake Charles for eight years and had been employed as a truck driver for approximately seventeen years. Plaintiff testified that on the afternoon of July 3, 1978, he left on a "run" and returned to Lake Charles at about six the next morning (July 4th). He then went home and slept until noon. Plaintiff stated that during the next four hours he consumed four to eight 10-ounce cans of beer while barbecuing at his home for friends and relatives. He stated that upon his wife's insistence, he quit drinking about four in the afternoon because he had to work that evening.
After reporting to work about 7:00 p. m., plaintiff made several telephone calls and did not begin his run to Houston, Texas, until approximately 8:30. He stated that nightfall had approached and the roads were dry. About 8:45, as he was proceeding west at 60-62 mph in a 55 mph zone in an 18-wheel truck on the innermost of the three lanes of Interstate 10, he ran through a barricade set up by the Louisiana Department of Transportation and Development, collided with a department road repair truck, and hit two other state vehicles at the scene of the barricade before coming to a stop some 330 feet from the barricade.
Personnel of the Department of Transportation and Development who witnessed the accident report that a barricade and various warning devices including twelve 18-inch orange cones placed approximately every twenty paces preceding the barricade, three warning signs placed every one-tenth mile preceding the cones, and flashing devices on the trucks parked in the area were set up to indicate road repair was in progress on the inside westbound lane of Interstate 10. There was conflicting testimony as to whether flares were in place at the location. The work was necessitated because of a buckle or blowout in the pavement which had occurred earlier in the afternoon. Plaintiff testified that he did not see the warning devices and thus did not hit his brakes until he saw the barricade. An inspection of the area following the accident revealed that skid marks did not begin until the spot where the barricade was originally positioned.
State Trooper Jerry Lee Bowden, the officer investigating the accident, as well as members of the road repair crew, testified that they smelled alcohol on plaintiff's breath as they removed him from his truck and placed him on a stretcher. They also observed an empty beer can on the front seat of the truck plaintiff was driving. He was first taken to Calcasieu-Cameron Hospital. It was stipulated that an IV solution was administered to plaintiff at that time. He was then transferred to Lake Charles Memorial Hospital where, upon the request of Trooper Bowden, a blood alcohol sample was taken at approximately 10:12 p. m. The results showed that the level of alcohol in the blood was approximately 0.104 percent.[3] An expert witness, Dr. Avery Cook, testified that 0.104 percent would have some effect on plaintiff's senses:
"[I]t's a drug that affects most every part of the body, but particularly the nervous system; and it is a sedative. It decreases function in the nerve cells, the transmission of nerve impulses.
He further stated that any level of alcohol has a depressant effect and affects an individual's reaction. Dr. Cook also expressed *1180 an opinion that the amount of alcohol in the blood stream will increase for a short period after intake (about thirty or forty-five minutes) and thereafter decrease as time elapses. He further stated that an IV solution would decrease a person's blood alcohol level.
Exactly what caused plaintiff not to see the warning devices and the barricade prior to impact is a matter of dispute. In a detailed taped statement given to the insurance adjuster for Kroger at Lake Charles Memorial Hospital on the day following the accident, plaintiff stated that he did not see the illuminated barricades until he hit them. Upon being questioned as to whether he did not see them because he had dozed off or fallen asleep, plaintiff replied: "I'm afraid that's exactly what had happened." The adjuster then asked: "You sure?" and plaintiff answered: "Yes sir." However, at trial, plaintiff did not recall telling the investigator that he fell asleep while driving but instead testified that he had momentarily taken his eyes off the road to replace the microphone of his citizens band radio and when he again focused upon the road, it was too late to avoid the barricade.
The sole issue presented for our determination is whether Kroger met the burden of proving that plaintiff's injury was caused by his intoxication at the time of the injury. If so, Kroger would be exempt from and relieved of paying compensation.
La.R.S. 23:1031 provides in pertinent part:
If an employee not otherwise eliminated from the benefits of this Chapter, receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated.
(Emphasis added.) La.R.S. 23:1081 further provides that:
No compensation shall be allowed for an injury caused ... (2) by the injured employee's intoxication at the time of the injury....
In determining whether or not an employer shall be exempt from and relieved of paying compensation because of injury sustained by an employee for the causes and reasons set forth in this Section, the burden of proof shall be upon the employer.
Our review of the record convinces us that Kroger clearly proved that plaintiff's injury was caused by his intoxication at the time of injury. Plaintiff admitted that he drank four to eight beers at a barbecue during the afternoon preceding the accident and only quit drinking at the insistence of his wife that he had to work that evening. There was evidence of alcohol on plaintiff's breath at the time of the accident. An empty beer can was found on the front seat of his truck. A blood alcohol sample taken from plaintiff about an hour and a half after the accident and after he had been administered an IV solution revealed a blood alcohol content of 0.104 percent. Under these circumstances, we conclude that plaintiff was intoxicated at the time of his injury.
Moreover, we have no difficulty in further concluding that plaintiff's intoxication caused him to doze off or fall asleep at the wheel. We reach this conclusion based on his own admission on the day following the accident despite his testimony to the contrary at trial, the medical expert testimony that alcohol has a sedative effect, the manner in which the accident occurred, and the fact that the accident happened only a short while after he picked up his rig.
Under these circumstances, we find that the courts below were clearly wrong in determining that defendant failed to meet the burden of proving that plaintiff's injury was caused by his intoxication at the time of the injury. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). To the contrary, we consider that defendant met its burden and should therefore be exempt from and relieved of paying compensation to plaintiff in this case. Accordingly, we must reverse the judgment of the court of appeal and dismiss plaintiff's suit.

*1181 DECREE
For the reasons assigned, the judgment of the court of appeal is reversed and judgment is rendered herein in favor of defendant, The Kroger Company, Inc., and against plaintiff, Roland Parker, dismissing plaintiff's suit at his cost.
CALOGERO, J., dissents and assigns reasons.
DENNIS, J., dissents for reasons assigned by CALOGERO, J., and the Court of Appeal.
WATSON, J., dissents for reasons assigned by CALOGERO, J.
CALOGERO, Justice, dissenting.
I dissent for the reasons given by the Court of Appeal.
In my opinion, the defendants have neither carried their statutory burden of proving plaintiff's "intoxication" at the time of the accident, nor have they shown the requisite causation link between plaintiff's minimal blood alcohol and the fact of the collision.
NOTES
[1] 382 So.2d 458 (La.App.3d Cir. 1980).
[2] 385 So.2d 784 (La.1980).
[3] La.R.S. 32:662 creates a presumption that a person was under the influence of alcoholic beverages if at that time 0.10 percent or more by weight of alcohol was in his blood. Although this presumption is inapplicable in civil actions, it in no way prevents a civil litigant from introducing into evidence a person's blood alcohol content and testimony of competent expert witnesses to interpret the effects of such a level on a person's ability to operate a motor vehicle. Champagne v. McDonald, 355 So.2d 1335 (La.App.3d Cir. 1978); Brown v. Collins, 223 So.2d 453 (La.App.3d Cir. 1969).