401 So.2d 1257 (1981)
Robert CLAY
v.
BITUMINOUS CASUALTY CORPORATION.
No. 14220.
Court of Appeal of Louisiana, First Circuit.
June 29, 1981.
Rehearing Denied August 25, 1981.
Gordon Hackman, Boutte, for plaintiff and appellant.
Harold A. Thomas, New Orleans, for defendant and appellee.
Before COVINGTON, CHIASSON and LEAR, JJ.
COVINGTON, Judge.
Plaintiff, Robert Clay, filed this civil action seeking workmen's compensation benefits, together with penalties and attorney's fees, from his employer's workmen's compensation insurer, Bituminous Casualty Corporation. The trial court rendered judgment in favor of defendant, dismissing plaintiff's claim. From this judgment of dismissal, plaintiff perfected the present appeal. We affirm.
The record discloses that, in February of 1976, plaintiff was employed as a truck driver for Henry Industries of Houma, Louisiana. Pursuant to his duties, plaintiff was sent to Oklahoma to drive a truck loaded with cement to his employer's place of business in Houma. Another employee of Henry Industries, Clarence Trahan, had also been dispatched to Oklahoma to drive a truckload of cement to Houma.
Plaintiff and Trahan embarked on their journey to Houma on February 7, 1976. They spent the nights of February 7 and February 8 at motels along the way. On February 9, they resumed their trip at approximately 6:30 a. m. About 5:30 or 6:00 p. m. they stopped for dinner at a restaurant in White Castle, Louisiana, where they purchased a six pack of beer. According to their own testimony, they each drank three *1258 beers. It was also their testimony that the three beers were the only alcoholic beverages which they drank on that day.
After finishing their dinner, they resumed their journey on Louisiana Highway 1 toward Houma. At this time, plaintiff was driving the lead truck, and Trahan was driving 200 to 300 feet behind plaintiff. They were traveling at about 45 to 50 miles per hour. Plaintiff testified that, at approximately 7:00 p.m., he swerved his truck onto the shoulder of the highway and then immediately tumbled down an embankment.
There is conflicting testimony as to why plaintiff swerved his truck and ultimately rolled down the embankment. He said that he had to swerve in order to avoid a car approaching in his lane of travel from the opposite direction. At trial, plaintiff testified that the car had made contact with his truck; however, on the day of the accident, he had made a statement to the investigating officer, State Trooper Joseph Himel, that the "phantom" car had not hit his truck. Mr. Trahan testified that the oncoming car had forced plaintiff off the road. However, he stated that, thereafter, it was two or three minutes before plaintiff's truck tumbled down the embankment. In any event, the car, which plaintiff alleges forced him off the road, proceeded on its way and was never identified.
After the accident, plaintiff was brought to Assumption General Hospital. After reaching the hospital, Trooper Himel spoke with plaintiff about the accident; and Himel, with the consent of plaintiff, caused a blood alcohol test to be administered to plaintiff. The resulting analysis indicated that plaintiff had a blood alcohol level of .15.[1]
Dr. Monroe Samuels, an expert in forensic pathology, stated that anyone with a .15 blood alcohol level would be intoxicated. Dr. Samuels testified as follows:
"I can ..., without qualification, say that this particular individual [a person with .15 blood alcohol level] is an unsafe driver and is grossly impaired insofar as his driving capability is concerned."
Dr. Samuels further stated:
"I think impairment of visual acuity, reflex time, motor coordination, and all of the other things that go into the rather complex motions, thought processes, and reaction that are involved in driving, at a .15, an individual would have to be considered in the unsafe driving category."
As a result of the accident, plaintiff suffered an injury to his shoulder. Plaintiff alleges that this injury has rendered him totally and permanently disabled within the meaning of Louisiana's Workmen's Compensation Law.
The sole issue posed on appeal is whether the trial court manifestly erred in finding that plaintiff was intoxicated and that his intoxication was the cause of his injuries.
The statutory law relevant to plaintiff's right to workmen's compensation benefits is Louisiana Revised Statutes 23:1031 and 23:1081.
La.R.S. 23:1031 provides in pertinent part:
"If an employee not otherwise eliminated from the benefits of this Chapter, receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated." (Emphasis added).
La.R.S. 23:1081 provides, in part, that:

*1259 "No compensation shall be allowed for an injury caused ... (2) by the injured employee's intoxication at the time of the injury ....
"In determining whether or not an employer shall be exempt from and relieved of paying compensation because of injury sustained by an employee for the causes and reasons set forth in this Section, the burden of proof shall be upon the employer."
In the instant case, the trial court made factual findings and determined that the defendant had carried its burden of proving that plaintiff was intoxicated and that his intoxication was the cause of his injuries. In so finding, the trial court rejected the testimony of plaintiff and Trahan to the effect that plaintiff was not intoxicated and that he swerved off the road to avoid an oncoming car. Our review of these factual findings are limited to a determination of whether or not the record establishes that the trial court is clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973). See also Parker v. Kroger's, Inc., 394 So.2d 1178 (La. 1981). Moreover, when testimony is in conflict, reasonable evaluations of credibility and reasonable inferences of fact drawn by the trier of facts should not be disturbed on appeal. Martin v. Feiber, 357 So.2d 5 (La. App. 1 Cir. 1977).
Our review of the record convinces us that the trial court was not clearly wrong in finding that plaintiff was intoxicated at the moment his truck swerved off the highway. Plaintiff admitted that he had been drinking. The test administered to plaintiff after the accident showed his blood alcohol level to be .15. Dr. Samuels testified that anyone with this blood alcohol level would be intoxicated and his senses and reflexes would be greatly impaired.
Moreover, we find it clear that the trial court was correct in concluding that plaintiff's intoxication caused him to swerve off the road. Plaintiff's testimony at trial conflicted with the statement he had made shortly after the accident. The testimony of the only other eyewitness, Trahan, also conflicted with the testimony of plaintiff in many respects. Dr. Samuels testified categorically that a person with a .15 blood alcohol level would be an unsafe driver. In light of these factors, we certainly see no manifest error in the trial court's rejection of the testimony of plaintiff and Trahan concerning a third car.
Under the facts and circumstances of the instant case, we find that the trial court was not clearly wrong in determining that defendant met its burden of proving that plaintiff's intoxication caused the accident. See Arceneaux v. Domingue, supra; Canter v. Koehring Company, supra; Parker v. Kroger's, Inc., supra. Accordingly, the judgment of the trial court dismissing plaintiff's action for workmen's compensation benefits is affirmed. Costs of appeal are to be borne by plaintiff.
AFFIRMED.
NOTES
[1] In Parker v. Kroger's, Inc., 394 So.2d 1178 (La.1981), n. 3, the Court stated:

"La.R.S. 32:662 creates a presumption that a person was under the influence of alcoholic beverages if at that time 0.10 percent or more by weight of alcohol was in his blood. Although this presumption is inapplicable in civil actions, it in no way prevents a civil litigant from introducing into evidence a person's blood alcohol content and testimony of competent expert witnesses to interpret the effects of such a level on a person's ability to operate a motor vehicle. Champagne v. McDonald, 355 So.2d 1335 (La.App. 3rd Cir. 1978); Brown v. Collins, 223 So.2d 453 (La. App. 3rd Cir. 1969)."