460 So.2d 1125 (1984)
Ricky Edward FROST, Plaintiff-Appellant,
v.
Charles ALBRIGHT, dba Albright Sawmill, Defendant-Appellee.
No. 16601-CA.
Court of Appeal of Louisiana, Second Circuit.
December 5, 1984.
Writ Denied February 4, 1985.
*1126 Donald R. Miller, Shreveport, for plaintiff-appellant.
Hudson, Potts & Bernstein by Gordon L. James, Monroe, for defendant-appellee.
Before PRICE, MARVIN and SEXTON, JJ.
MARVIN, Judge.
In this worker's compensation action plaintiff appeals a judgment barring plaintiff's recovery because his injury was caused by his own intoxication. LRS 23:1081.
Plaintiff contends that the trial court erred in finding that the employer proved by a preponderance of the evidence that plaintiff was intoxicated; in finding that plaintiff's intoxication was the cause of the accident; and in failing to find, in the alternative, defendant estopped to raise the defense of intoxication when defendant knew or should have known that plaintiff was intoxicated and could not safely operate the radial arm saw which amputated his three fingers. We affirm.

FACTS
Plaintiff is a 25-year-old male with a seventh grade education who had worked for defendant from time to time for several years before the accident. On August 24, 1979, while operating a radial arm saw, plaintiff accidentally amputated the three middle fingers of his right hand.
Plaintiff's testimony regarding the day of the accident was that he had two beers when he awoke about 7 a.m., and that he shared a quart of beer with another employee around 2:30 p.m. before the accident occurred about 4:00 p.m. Other witnesses testified that plaintiff bought some beer and consumed a quart of beer during the noon hour on the day of the accident.
Plaintiff was using the radial arm saw to "cut and notch" fence boards. The saw is designed to be held with the right hand by a handle and is then drawn across a board that is held in a patterned jig with the left hand. Plaintiff explained that the accident occurred when the saw blade hit a knot hole in the board he was cutting and kicked forward, causing his hand to be forced loose from the handle and to make contact with the saw blade.
Plaintiff was apparently alone in the building when the accident occurred. Defendant's son, a managerial employee, stated that he saw beer bottles in the area of the saw when he went to the building after the accident. He also stated that he found a board in the jig but the board had not been notched or "sawed."
*1127 A blood sample taken from plaintiff about an hour and a half after the accident showed an alcohol level of .135 grams percent. Defendant's medical expert testified that a person with such a blood alcohol level would be intoxicated and could not safely operate a radial arm saw. He explained that a person so intoxicated would have diminished vision, slowed thought processes, reduced balance, and poor hand and eye coordination.

INTOXICATION
Plaintiff does not primarily argue that the court erred in finding plaintiff intoxicated but directs his attack toward the finding that plaintiff's intoxication caused the accident.
The standard courts should use in determining whether or not intoxication is the "cause" of an accident has been recently discussed. Prior to 1981 only two reported cases had upheld the intoxication defense. Professor Johnson initially commented that "the appellate court ha[s] taken such a narrow view of the intoxication defense as virtually to eliminate it from the Act," because the standard was that intoxication "solely caused" the accident. 42 La.L.Rev. 620, (1982) at 640.
Recent cases have rejected the "solely caused" standard. Renfroe v. City of New Orleans, 394 So.2d 787 (La.App. 4th Cir.1981); Clay v. Bituminous Cos. Co., 401 So.2d 1257 (La.App. 1st Cir.1981). Malone-Johnson has since observed that the more recent view is correct and "may restore the defense of intoxication to its proper place in the Act." We agree the defense should be applicable when "intoxication is a substantial cause of the injury." Malone-Johnson, Vol. 14, § 344.
In O'Neal v. Home Ins. Co., 404 So.2d 1355, 1357 (La.App. 2d Cir.1981), we held that the defendant has the burden of proving both the intoxication and that the intoxication caused the accident. We observed that if defendant proves intoxication and that the accident is of a sort that would not ordinarily happen absent intoxication, then perhaps the burden of proving another (and equally substantial) cause would shift to the plaintiff.
Defendant introduced testimony and a video tape illustrating the operation of the radial arm saw.
Plaintiff argues that the length of time he worked and the number of fence boards he successfully cut and notched, without mishap, before the accident, indicate that his intoxication was not the cause of the accident. Plaintiff emphasizes that part of Ray v. Superior Iron Works and Supply Co., Inc., 284 So.2d 140 (La.App. 3d Cir.1973), writ refused, which reasoned that intoxication could not be the cause of Ray's injury because Ray had successfully negotiated a winding road just prior to running off the road. The Ray court found that intoxication was not the "proximate" cause of the accident, which we interpret to mean as not a substantial cause in fact of the accident. "Proximate" cause primarily inquires whether a defendant's duty extends to the particular risk in question that causes injury to a plaintiff in a tort action. The LRS 23:1081 cause is cause in fact, and not "legal" cause, in our opinion.
Whether intoxication is the cause in fact of an accident covered by the worker's compensation law, of course, must be determined by the circumstances of the individual case.
Here the trial court found plaintiff's attempt to explain how the accident happened was unbelievable. The court focused on the defendant's son's testimony that after the accident a board was in the jig but had not been notched. This testimony contradicted plaintiff's statement that the saw hit a knot hole in the board while he was notching the board. If the saw had lurched because of a knot in the board, the saw marks and the knot should have been evident upon examination after the accident. Examination was made and none were found. The court also noted that the video tape demonstration showed that the saw could not lurch forward from its "rest" position with a board in position in the jig to be cut. The trial court found that plaintiff's *1128 "well-proven intoxication more probably than not caused the accident."
An employer in a worker's compensation suit who pleads the defense of intoxication, must prove by a preponderance of the evidence, that plaintiff's intoxication was a substantial cause of the accident, one which would not ordinarily happen absent intoxication. The trial court in this case impliedly applied the correct standard. The record supports the conclusion that defendant proved by a preponderance of the evidence that plaintiff's intoxication was a substantial cause of the injury, one which ordinarily would not happen absent intoxication. We will not disturb the trial court's finding. Canter v. Koehring Company, 283 So.2d 716 (La.1973); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

ESTOPPEL
Plaintiff further argues that defendant should not have been allowed to assert the intoxication defense but should be estopped because defendant knew or should have known that plaintiff was intoxicated. Plaintiff refers to his telephone conversation with defendant on the morning of the accident in which plaintiff claims that defendant insisted he come to work even though defendant had been told that plaintiff was "sick" from drinking the night before; defendant's "close contact" with plaintiff after defendant came and drove plaintiff to work at noon after plaintiff had the two beers; that plaintiff was obviously intoxicated during the day, as evidenced by testimony of the store clerk who sold plaintiff the beer; that defendant or his managerial employees had seen plaintiff only 1 ½ hours before the accident when they instructed plaintiff to cut and notch fence boards, and that the blood sample, taken at 5:30 p.m., indicated that plaintiff was intoxicated to some greater degree when the accident occurred.
Defendant replies that he should not have known of plaintiff's intoxication because plaintiff called defendant requesting a ride in "mid-morning" and did not inform defendant that he had been drinking; neither defendant nor any of his managerial employees had any "close contact," but only "distant contact," with plaintiff until after the accident; defendant should not be required to ferret out his employees who violate his rule that prohibits drinking on the job; and that plaintiff knew that drinking was prohibited at the mill and concealed his consumption of alcohol and his condition.
The trial court, in any event, implicitly concluded that defendant did not know that plaintiff was intoxicated until after the accident. The manifest error rule applies to this finding. There is sufficient evidence in the record to show that this conclusion is not clearly wrong.
Our review convinces us that defendant did not know, or should not have known, that plaintiff was intoxicated until after the accident, and that plaintiff's contention to the contrary is untenable.
Plaintiff testified that he drank two beers between 7 and 8 a.m. He said that defendant picked him up to drive him to work around noon. Defendant testified that while he was not sure, he thought he picked plaintiff up earlier, during the mid-morning.
Defendant's medical expert stated that, assuming plaintiff's version of his consumption of alcohol, plaintiff would have had about a .10 percent blood alcohol level at 10 a.m. on the day of the accident. The expert also testified that at noon plaintiff would have had a blood alcohol level of .05 percent. The expert concluded that at both 10 a.m. and at noon, plaintiff would have been on the down side of his blood alcohol level, i.e. that his level would be decreasing rather than increasing. This expert also testified that it would be difficult to detect that plaintiff was intoxicated when his blood alcohol level was .10 percent and diminishing or decreasing because most of the behavioral indications of intoxication would be absent at that level.
Testimony that plaintiff was obviously intoxicated at noon lends some support to plaintiff's contentions that defendant *1129 should have known that plaintiff was intoxicated. Plaintiff, however, admitted that he knew of the "well-known rule" forbidding alcohol on the job, and the contact he had with managerial employees was at some distance. Under these circumstances it is easy to deduce that plaintiff was careful to disguise his intoxication. When we also consider the statements by plaintiff's co-workers that during the noon hour they did not know that plaintiff was intoxicated until plaintiff told them, and plaintiff's statement that his contact with managerial employees was at some distance and not close, we conclude that defendant should not have known of plaintiff's intoxication.
Under these circumstances, we hold that defendant did not have a duty to determine, and should not have determined, whether plaintiff was intoxicated. The trial court did not err in allowing the defendant to advance the defense of intoxication and correctly sustained that defense.
At appellant's cost, the judgment is AFFIRMED.