BECKER, Judge.
Plaintiff, Joseph H. Gaffney, Jr. filed suit against defendants seeking worker’s compensation benefits for an injury sustained during the course and scope of his employment. Plaintiff also sought penalties and attorney fees for arbitrary termination of benefits. The trial court found plaintiff to be temporarily totally disabled and awarded benefits. The trial court denied plaintiff’s claim for penalties and attorney fees. Defendants appeal, alleging the following specifications of error: .
(1) The trial court erred in finding plaintiff temporarily totally disabled;
(2) The trial court erred in calculating plaintiff’s worker’s compensation rate for temporary total disability benefits of $151.20 per week based on a weekly wage of $226.80.
(3) The trial court erred in finding that the evidence fails to carry the burden of the defense of intoxication.
Plaintiff subsequently answered the appeal, arguing that the trial court erred in not awarding penalties and attorney’s fees for defendants’ arbitrary and capricious termination of benefits, and seeking an increase in benefits.
Plaintiff, Joseph H. Gaffney, Jr., was working as a stagehand for Saenger The-atre and Zev Bufman Entertainment on October 21, 1985. Gaffney was injured when he fell through an opening in the stage which was used to lower equipment into the basement. Plaintiff landed twelve *1016 feet below on his head and right shoulder, sustaining among other injuries, a pulmonary contusion, basal skull fracture, cerebral contusion, cerebral concussion, and cerebral spinal fluid leak.
Following his injury, Gaffney was admitted to Charity Hospital on October 21,1985 until he was discharged to the care of Tulane Medical Center where he remained as a patient until November 1,1985. After his release, he was treated as an outpatient at the Tulane Medical Center Clinic until March of 1986. In July of 1986, plaintiffs treatment was taken over by Drs. L.S. Kewalramani and Leon Weisberg.
Dr. Kewalramani continued to monitor plaintiff on a regular basis through the date of trial, specifically treating those complaints relating to his cervical and upper back, right arm and “right hand locking.” Plaintiffs symptoms finally culminated in a seizure on July 14, 1987, after which he was hospitalized at Charity Hospital with follow up care being provided by Drs. Kewalramani and Weisberg.
Gaffney originally received weekly compensation benefits of $68.00 per week from October 21, 1985 through March 31, 1986 when all benefits terminated. The reason for the termination of benefits was contested by all parties. Defendants argued that benefits were terminated because the investigation of the accident revealed that the plaintiff was intoxicated at the time of the accident and that said intoxication was a substantial cause of the accident and plaintiffs resulting injuries. Plaintiff alleged that his benefits were terminated due to a coverage dispute between his employer and the employer’s worker’s compensation carrier. Defendant Argonaut Insurance Company has denied coverage to Saenger and Zev Bufman, alleging that the policy of insurance was terminated prior to plaintiff’s accident for nonpayment of premiums.
The trial court bifurcated the coverage issue from the worker’s compensation claim. This appeal arises from the judgment of the trial court rendered in the worker’s compensation claim. The trial court found that the plaintiff was injured in the course and scope of his employment; that he was temporarily totally disabled at the time of trial; and awarded weekly compensation benefits in the amount of $151.20 (based on a weekly wage of $226.80). The trial court further noted that the seizure plaintiff sustained on July 14, 1987 was causally related to the original accident on October 21, 1985. The court also held that defendants failed to meet their burden of proving the special defense of intoxication. However, in regards to plaintiff’s demand for penalties and attorney fees for arbitrary termination of benefits, the trial court found that the termination was not arbitrary, and that there was an adequate basis for termination of benefits based upon the special defense of intoxication.
Defendants argue as their first specification of error that the trial court erred in finding plaintiff entitled to worker’s compensation benefits, and more specifically, that plaintiff was temporarily totally disabled. Our review of the factual findings of a trial court are limited to a determination of whether or not the record establishes that the trial court is clearly wrong. Arcenaux v. Domingue, 365 So.2d 1330 (La 1978); Canter v. Koehring Company, 283 So.2d 716 (La.1973). Moreover, when testimony is in conflict, reasonable evaluations of credibility and reasonable inferences of fact drawn by the trier of fact should not be disturbed on appeal. Clay v. Bituminious Casualty Company, 401 So.2d 1257 (La.App. 1st Cir.1981), writ denied 409 So.2d 616 (La.1981), Martin v. Feiber, 357 So.2d 5 (La.App. 1st Cir.1977).
We can not say that the trial court’s findings are clearly wrong. The testimony of all witnesses indicates that Mr. Gaffney was in the scope and course of his employment when injured. He was involved in the unloading and storing of wardrobe boxes and equipment for the production, “42nd Street,” when the accident occurred. According to the testimony of Elaine Gilbert, one of plaintiff’s co-workers, Mr. Gaffney was injured as he tried to prevent another of his co-employees from falling into the opening. Ms. Gilbert testified that the person working next to her, Jo May, was *1017 knocked down by a falling wardrobe crate. Gaffney saw Jo May falling, and reached out for her with his right hand and attempted to steady himself with his left hand on another crate. When he did that, the crate fell away from him and he fell head first into the hole.
Following the accident, Gaffney’s medical problems included among other things, cerebral contusion, cerebral spinal fluid leak, dizziness, right hand locking, neck pain, and right arm and shoulder pain. Immediately after the accident, plaintiff was treated at Charity Hospital and was then transferred to Tulane Medical Center. Upon discharge from the medical center, plaintiff underwent follow up care as an outpatient until March 1986, when his benefits were terminated. In July 1986, Mr. Gaffney came under the care of Dr. Kewal-ramani, and was still under treatment at the time of trial. Dr. Leon Weisberg was also consulted by plaintiff on a periodic basis for neurological problems. Both physicians testified at trial that they believe the seizure sustained by plaintiff in July, 1987 was causally related to the original head injury in October 1985. Even defendant’s physician, Dr. Richard Warren Levy, admitted that plaintiff’s head injury in October 1985 was the “likely cause” of the seizure.
Subsequent to the seizure, plaintiff lost the use of his right arm, and has had continual arm and neck pain, balance and memory problems, and right hand locking. According to plaintiff’s treating physician, Dr. Kewalramani, Mr. Gaffney is totally and permanently disabled. However, plaintiff may improve in the future. Dr. Weis-berg testified that plaintiff may continue to have seizures, resulting in further memory disturbance and behavioral changes.
A claimant is entitled to an award for temporary total disability if he establishes he is disabled to do the same occupation or other gainful occupation at the time of trial, though it appears he will be able to return to some type of work in the foreseeable future. Price v. Fireman’s Fund Insurance Co., 502 So.2d 1078 (La.1987); Lang Pham v. Delta Petroleum Co. Inc., 503 So.2d 149 (La.App. 5th Cir.1987). The evidence adduced at trial sufficiently establishes that Gaffney was temporarily totally disabled. Both treating physicians stated that the plaintiff could not return to work at the time of trial and would probably continue to have medical problems in the future.
Furthermore, the medical evidence establishes that the seizure plaintiff suffered in July 1987 was causally related to the original accident in October 1985. Defendants raised the question of whether plaintiff’s alleged alcoholism or porphyrra (a pre-ex-isting condition) was the cause of the seizure. However, plaintiffs’ treating physicians testified at trial that while both conditions (alcoholism or porphyrra) may cause some type of seizure, they do not cause the type of seizure plaintiff suffered in July 1987. Dr. Weisberg stated at trial that
“[the] brain contusion (plaintiff suffered in October 1985) changed as a pathological process evolves. That it became smaller in size, less likely to — less easily visualized on the CAT scan. However, the pathological change that occurred caused an electrical change within the brain and this electrical change within the brain led to the development of a seizure discharge within the brain. Which is seen as the medial post ictal state of slowing of the inner brain, without any focal abnormality on July 15th [1987] and then twelve days later as slow wave focus as seen in a focal distribution in the left hemisphere [of the brain.]”
Even defendant’s physician, Dr. Levy, testified that the head injury plaintiff sustained in October 1985 was “more likely” the source of the seizure sustained in July 1987. Therefore, we can not say that the trial judge’s determination of plaintiff’s disability was clearly erroneous. This specification of error is without merit. Furthermore, post-accident complications, whether of a purely a medical nature, or whether relating to subsequent off the job accidental injury, may be compensable if they are causally related to an on the job accident. See Malone, Louisiana Worker’s Compensation Law & Practice, Section 233; Larson, *1018 Workmen’s Compensation Law Section 13.-11 and Section 13.12; Carter v. Rockwood Ins. Co., 341 So.2d 595 (La.App. 2nd Cir.1977).
An employer in a worker’s compensation suit who pleads the defense of intoxication, must prove by a preponderance of the evidence, that the employee’s intoxication was a substantial cause of the accident. Thus, the employer must prove that the employee was intoxicated at the time of the accident, and that the employee’s intoxication caused the accident. L.S.A.-R.S. 23:1081; Frost v. Albright, 460 So.2d 1125 (La.App. 2nd Cir.1984), writ denied 462 So.2d 1266 (La.1985); O’Neal v. Home Ins. Co., 404 So.2d 1355 (La.App. 2nd Cir.1981), writ denied 409 So.2d 655 (La.1982).
Defendants’ support their defense of intoxication upon the results of a blood alcohol test performed on plaintiff at Chari: ty Hospital after the accident. According to Ms. Ollie Hudson, a medical technologist with Charity Hospital, plaintiff’s blood alcohol level was .123. Plaintiff himself testified that he had two to three beers with his dinner prior to going to the Saenger. This testimony was corroborated by plaintiff’s wife. Thus, while there may be convincing evidence of plaintiff’s intoxication, there was no evidence presented of unusual behavior generally associated with intoxication leading up to or contributing to the accident.
None of plaintiff’s co-workers who testified at trial indicated that plaintiff appeared intoxicated the night of the accident. Don Gandoline, Jr, Glen Gandoline, and Elaine Gilbert, plaintiff's co-workers, all testified that plaintiff did not appear to be under the influence of alcohol; that he did not have any impaired faculties; that he did not need assistance in the performance of his duties and that he performed his job in an acceptable manner. Such testimony is sufficient for a finding by the trial court that the defendants failed to carry their burden of proof as established by L.S.A.-R.S. 23:1001. The prima facie proof of the .123 alcohol content of plaintiff’s blood was successfully rebutted by the testimony of plaintiff’s witnesses. The plaintiff's intoxication was not the proximate cause of the injury. Therefore, we affirm the trial court’s finding that such intoxication did not bar plaintiff’s claim. See Marie v. Casualty Reciprocal Exchange, 424 So.2d 1121 (La.App. 1st Cir.1982); O’Neal v. Home Insurance Company, 404 So.2d 1355 (La.App. 2nd Cir.1981).
While the results of the blood alcohol test may not have been sufficient to assist defendants in establishing the defense of intoxication, such test results would be sufficient to allow defendants to deny the worker’s compensation claim. When any such information is available to an employer and/or its worker’s compensation insurer, they are entitled to assert a good faith defense of intoxication. Therefore, if plaintiff’s benefits were terminated as a result of the defense of intoxication, then it cannot be said that defendants acted arbitrarily and capriciously in withholding plaintiff’s benefits. Marie, supra; O’Neal, supra. However, the reason for termination of plaintiff’s benefits was not simply the defense of intoxication. Plaintiff testified at trial that he was informed that his benefits were terminated as a result of a coverage dispute between his employer and its worker’s compensation insurer. Defendants produced no evidence at trial as to the reason for termination of Gaffney’s benefits.
The issue of whether or not the refusal to pay compensation benefits is arbitrary, capricious, or without probable cause is a factual one to be determined upon the merits of each case. If the employer has a bona fide dispute as to whether the injury is compensable or if the legal issue involved is complex, penalties would be denied. Malone and Johnson, Workmen’s Compensation, Section 389 in La. Civil Law Treatise 289; Brasseaux v. Argonaut Ins. Co., 432 So.2d 1153 (La.App. 3rd Cir.1983); Stubbs v. Parish of East Baton Rouge, 343 So.2d 258, (La.App. 1st Cir.1977), writ denied, 345 So.2d 506 (La.1977). However, if the refusal is without substantial reason or upon mere protestation that the matter was unclear from a legal standpoint, then penalties and attorney’s fees *1019 are awardable. LaCalle v. Ashy Enterprises, 353 So.2d 439 (La.App. 3rd Cir.1977), writ denied, 355 So.2d 266 (La.1978); Brasseaux, supra.
Our review of the record reveals that plaintiff has proven that the termination of his benefit was a result of the coverage dispute between Saenger and Bufman, and their insurer, Argonaut Insurance Co. The jurisprudence is clear that when there is a coverage dispute between two insurers, such dispute is not a justifiable basis for withholding worker’s compensation benefits from the injured employee. Humphreys v. Marguette Casualty Co., 235 La. 355, 103 So.2d 895 (La.1958) overruled on other grounds; Henderson v. Travelers Insurance Company, 354 So.2d 1031 (La.1978); Fontenot v. Town of Kinder, 377 So.2d 554 (La.App. 3rd Cir.1979), writ refused 379 So.2d 1102 (La.1980); Joyner v. Houston General Ins. Co., 368 So.2d 1149 (La.App. 3rd Cir.1979). Likewise, a coverage dispute between an employer and its worker’s compensation insurer is not a justifiable reason for withholding benefits to an injured worker. In such circumstances, when the employer’s worker’s compensation carrier refuses to pay benefits to the injured employee, then it becomes the responsibility of the employer to insure that his employee receives the benefits to which the injured worker is entitled.
In the present case, when Argonaut terminated payments to plaintiff, it became incumbent on Saenger and Bufman to insure that Gaffney continued to receive his worker’s compensation benefits. If the coverage dispute was later resolved in Saenger and Bufman’s favor, they could seek reimbursement from Argonaut for all monies paid to Gaffney. Saenger and Buf-man’s refusal to pay worker’s compensation benefits to the plaintiff, said refusal soley based upon the coverage dispute, was arbitrary and capricious, and without probable cause.
L.S.A.-R.S. 23:1201.2 provides that attorney’s fees may be assessed against an employer who is not covered by worker’s compensation insurance and has arbitrarily and capriously refused to pay a worker’s compensation claim. Hebert v. Big Chief Truck Liner, Inc., 484 So.2d 255 (La.App. 3rd Cir.1986). Thomas v. Employer Ins. Co. of Wawsaw, 239 So.2d 701 (La.App. 1st Cir.1970); Saenger Theater and Zev Buf-man were allegedly not covered by worker’s compensation insurance at the time of plaintiff’s accident and may be assessed attorney’s fees for their failure to continue plaintiff’s worker’s compensation benefits. Accordingly, attorney’s fees are assessed against Saenger Theater, Inc. and Zev Buf-man. If Saenger and Bufman succeed in the litigation concerning the cancellation of the worker’s compensation insurance, they will, of course, be able to recover the attorney fees assessed against them.
Plaintiff and defendants have appealed from the trial court’s determination of weekly worker’s compensation benefits due plaintiff. The trial court awarded plaintiff weekly benefits of $151.20 based on an average weekly wage of $226.80. When a workman’s compensation claimant has been determined to be temporarily totally disabled, he is entitled to weekly benefits equal to sixty-six and ⅜% of wages during the period of such disability. L.S.A.-R.S. 23:1221(1). Wages are defined by the “average weekly wage at the time of the accident.” R.S. 23:1021(10).
L.S.A.-R.S. 23:1021(10) further provides
“The average weekly wage shall be determined as follows:
(a) Hourly wages.
(i) If the employee is paid on an hourly basis and the employee is employed for forty hours or more, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the accident or forty hours, whichever is greater; or
(ii) if the employee is paid on an hourly basis and the employee was offered employment for forty hours or more but regularly, and at his own discretion, works less than forty hours per week for whatever reason, then, the average of his total earnings per week for the four full weeks preceding the date of the accident; or
*1020 (iii) If the employee is paid on an hourly basis and the employee is a part-time employee, his hourly wage rate multiplied by the average actual hours worked in the four full weeks preceding the date of the injury.
The evidence at trial revealed that plaintiff received an hourly wage of $11.34, and worked fifty hours the four weeks prior to the accident, with a total of 392 hours from January 1, 1985 to the date of the accident. The trial court’s calculations were based upon plaintiff working 20 hours a week (20 hours X $11.34 = $226.80). The record does not support the trial court’s findings. Averaging the fifty hours plaintiff worked in the four weeks prior to the accident on a weekly basis, plaintiff worked 12.5 hours a week. Further, the trial court failed to state whether it had determined whether plaintiff was a full time or part time employee. As noted above, the statute provides different calculations for full time and part time employees.
Mr. Gaffney was an employee of the International Legion of Theatrical Stage Employes, Local 39. He worked through the union at the Saenger Theatre, among other places, setting up for their productions and performing convention work. Plaintiff established that he had worked for the union two years as a journeyman prior to the accident and never refused work. Plaintiff’s periods of employment were dependant upon the seasonal nature of the theatre and conventions as well as seniority system established by the union. This testimony was corroborated by Don Gandoline, Jr., plaintiff’s union steward.
Defendants argued that since plaintiff was not employed for a full forty hour week, then his worker’s compensation benefits should be determined by the actual hours worked for the four weeks preceding the accident. However, for such calculations to be utilized, the plaintiff must either be a part time employee or refuse work at his own discretion. The evidence adduced at trial clearly shows that plaintiff did not refuse work. He took whatever jobs became available to him through the union. Nor is there any evidence establishing that plaintiff was a part time employee.
L.S.A.-R.S. 23:1021(9) definds a “part time employee” as “an employee who as a condition of his hiring knowingly accepts employment that (a) customarily provides for less than forty hours per work week, and (b) that is classified by the employer as a part time position.” The employer must define the part time status of its employees and establish some procedure to satisfy the criteria that the employee knowingly took a part time position. Further, there must be an objective finding of the employee’s knowing acceptance of the part time job. Johnson v. Travelers Ins. Co., 509 So.2d 519 (La.App. 3rd Cir.1987).
Defendants failed to introduce any testimony supporting their allegation that the plaintiff was a part time employee. Don Gandoline, Jr., the union steward, did not testify in regards to any policies the union had relative to part time employees. The plaintiff was not cross-examined on whether he felt he was a full or part time employee. The record is devoid of any evidence supporting defendants’ contentions.
The record, however, clearly shows that plaintiff did not regularly work forty hours a week. His employment was seasonal, and dependant upon his position within the union ranking. Thus, the record does not fully support plaintiff’s argument that his weekly worker’s compensation benefits should be determined on a forty hour work week as provided for in L.S.A.-R.S. 23:1021(10)(a)(i).
As the trial court did not provide reasons for its use of an average weekly wage rate of $226.80, and as the record does not support the trial court’s calculations, we must reverse the trial court’s determination of plaintiff’s weekly worker’s compensation benefits.
Further, as the record is devoid of any evidence relevant to plaintiff’s employment status, it is impossible for this court to determine the appropriate weekly worker’s compensation benefits available to plaintiff using the calculations set out in L.S.A.-R. S. 23:1021(10). We, therefore, remand this matter to the trial court for a recalculation *1021 of the weekly workman’s compensation benefits due plaintiff.
Accordingly, the judgment of the trial court finding plaintiff temporarily totally disabled is affirmed; the judgment of the trial court finding the seizure of July 1987 causally related to the original injury in October 1985 is affirmed; and the judgment of the trial court finding that defendants failed to carry their burden of proving the defense of intoxication is affirmed.
The judgment of the trial court granting plaintiff worker’s compensation benefits in the amount of $151.20 is hereby reversed and remanded to the trial court for a determination of plaintiff’s employment status and recalculation of worker’s compensation benefits due plaintiff.
The judgment of the trial court denying plaintiff’s claim for attorney’s fees for the arbitrary and capricious termination of his worker’s compensation benefits as to defendants Saenger Theatre Inc., and Zev Bufman Entertainment is hereby reversed. Attorney’s fees are hereby awarded to plaintiff in a recommended amount to be set by the district court.
AFFIRMED IN PART; REVERSED IN PART; REMANDED.