543 So.2d 918 (1989)
Betty FAUGHT, et al.
v.
RYDER/P*I*E NATIONWIDE, INC.
No. 88 CA 0312.
Court of Appeal of Louisiana, First Circuit.
April 11, 1989.
Writ Denied May 19, 1989.
*919 Carolyn Pratt Perry, Baton Rouge, for plaintiff-appellant Jacquelyn Smith Burns.
Leonard Cardenas III, Baton Rouge, for defendant-appellee Ryder/Pie Nationwide, Inc.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
SHORTESS, Judge.
Donald Wayne Burns (decedent) died from injuries sustained when the 18-wheel tractor-trailer truck he was driving in the course and scope of his employment with Ryder/P*I*E (defendant) overturned on the ramp from I-10 to I-110 North in East Baton Rouge Parish. Betty Faught, as tutrix on behalf of Donald Stacy Burns and Bennett Scott Burns, as well as Ferris Shaine Burns, individually, (decedent's children) brought suit following decedent's death[1] to recover benefits under the Louisiana Worker's Compensation Law, more specifically, under LSA-R.S. 23:1332.[2]
The trial court granted defendant a summary judgment, apparently premised on two grounds:
(1) that Donald Wayne Burns was intoxicated at the time of the accident, thereby absolving Ryder of all worker's compensation liability pursuant to LSA-R.S. 23:1081; and
(2) that plaintiffs settled a tort claim with a third person, as that term is used in LSA-R.S. 23:1101-1103, without defendant's written approval as required by LSA-R.S. 23:1102(B), thereby forfeiting, under the terms of that statute, their right to future compensation. *920 In brief oral reasons for judgment, the trial court indicated that plaintiffs' unapproved settlement was the basis for dismissal. Jacquelyn Smith Burns, decedent's surviving spouse, brought this appeal. Defendant correctly asserts that it is the judgment, not the reasons for judgment, from which an appeal is taken, and argues before this court the correctness of the judgment under both LSA-R.S. 23:1102(B) and LSA-R.S. 23:1081. The position is well taken, and each theory will be addressed in turn. See Jones v. Louisiana Timber Company, 519 So.2d 333 (La.App. 2d Cir. 1988).
INTOXICATION
Under LSA-R.S. 23:1081, employee intoxication is a defense to employer worker's compensation liability. The statute expressly places the burden of proving the defense on the employer. Moreover, proof simply of intoxication will not suffice because the employer must show that the employee's intoxication caused the accident which resulted in his (the employee's) disability. Parker v. Kroger's, Inc., 394 So.2d 1178 (La.1981). Causation under LSA-R.S. 23:1081 has been interpreted to be cause in fact, rather than "proximate" cause (as that term is used in determining delictual liability under the duty-risk analysis). Frost v. Albright, 460 So.2d 1125 (La.App. 2d Cir.1984), writ denied, 462 So.2d 1266 (La.1985). This burden of proof has been successfully carried by the use of expert medical testimony regarding the effect of specific blood-alcohol levels combined with fact testimony from eyewitnesses as to the employee's alleged behavior. See Renfroe v. City of New Orleans, 394 So.2d 787 (La.App. 4th Cir.); writ denied, 399 So.2d 621 (1981); and Parker, 394 So.2d at 1179-80. There is no such evidence in the record before us.
Defendant asserts that a deposition or portion thereof of a Dr. Girod regarding the decedent's blood-alcohol level was submitted in support of the motion. It is not in the record on appeal. Moreover, it would seem that the defense of intoxication under LSA-R.S. 23:1081, which necessarily involves a factual determination of causation is, at least under these circumstances, inappropriate for disposition by summary judgment. It should be noted that our courts have repeatedly emphasized the importance of establishing the accuracy of blood-alcohol tests in the context of criminal proceedings. State v. Rowell, 517 So. 2d 799 (La.1988). The same concerns regarding the accuracy of these tests should apply to civil proceedings, notwithstanding the fact that the presumption of intoxication in LSA-R.S. 32:662 is expressly excluded from such proceedings. LSA-R.S. 32:662(C). The concern, although necessarily heightened by regard for the protection of individual constitutional rights in a criminal setting, is fundamentally over the accuracy of these tests. See Rowell, 517 So.2d at 800-802. In deciding a motion for summary judgment, the initial inquiry is whether the pleadings, and, if any, depositions, answers to interrogatories, admissions and affidavits, resolve all material issues of fact. LSA-C.C.P. art. 969; Sanders v. Hercules Sheet Metal, 385 So.2d 772 (La. 1980). Only then does the burden shift to the opposing party to show the existence of material facts still at issue. Sanders, 385 So.2d at 775. Additionally, where there is a choice of reasonable inferences to be drawn from the facts shown by the depositions, affidavits, and exhibits, they must be viewed in the light most favorable to the opposing party. Klohn v. Louisiana Power & Light, 406 So.2d 577 (La. 1981). Clearly, the burden never shifted in this case and an issue of material fact still exists over the defendant's allegation of decedent's intoxication.
SETTLEMENT OF TORT CLAIM WITHOUT EMPLOYER APPROVAL
Act 1 of the First Extraordinary Session of 1983 drastically revised several sections of the Louisiana Worker's Compensation Law, including LSA-R.S. 23:1102. The revision has been criticized roundly by Mssrs. Malone and Johnson for inept draftmanship. See W. Malone & A. Johnson, 14 Louisiana Civil Law Treatise, Workers' Compensation Law and Practice, § 373 (2d ed. Supp.1988). Johnson *921 additionally has criticized the revision as having upset the delicate balance of the interests of employer and employee necessary for a functional and equitable worker's compensation scheme. Johnson, Bound in Shallows and Miseries: The 1983 Amendments to the Workers' Compensation Statute, 44 La.L.Rev. 669, 670 (1984).
The revision of LSA-R.S. 23:1102(B) was in response to our supreme court's decision in Crabtree v. Bethlehem Steel Corp., 284 So.2d 545 (La.1973), which distinguished an employee's tort recovery through settlement from recovery through judgment. Johnson, supra, at 697. LSA-R.S. 23:1103 grants preference for reimbursement of compensation benefits to an intervening employer in the tort suit that ends in a judgment against a third person tort-feasor. Crabtree reasoned that the justification for LSA-R.S. 23:1103 is the prevention of a double recovery on the part of the employee and, because a compromise is less than full recovery, there is no double recovery when an employee compromises his tort claim and continues to receive compensation benefits. Crabtree, 284 So.2d at 555 (on rehearing.)
Justice Tate observed in his dissent in the original opinion in Crabtree, 284 So.2d at 553, that:
[t]he primary purpose of the act is to benefit injured employees, not to reimburse employers for workmen's compensation benefits paid out of amounts received by employees, except in the limited instances provided by La.R.S. 23:1101 (a direct suit by the employer against the tortfeasor) and 23:1103 (to share in the apportionment of "damages recovered" by suit).
In writing the opinion for the majority on rehearing, Justice Tate observed that a compromise between the employee and the third person, under the express language of LSA-R.S. 23:1103, does not affect the rights of the employer to obtain reimbursement for the compensation benefits it has paid, and that allowing preferential recovery of these benefits from the compromise would be an inequitable boon to the employer. Crabtree, 284 So.2d at 555 (on rehearing). The revision has retained this language in LSA-R.S. 23:1103 and placed similar language in LSA-R.S. 23:1102(C)(4). The employer's right to recover what it has paid from the party at fault is therefore well fortified in the existing compensation scheme.
The legislature has nevertheless chosen to insert a punitive provision in the scheme in an effort to force the employee to involve the employer not only in civil proceedings against the third person tort-feasor, but also in settlement negotiations even if suit has not been brought. See LSA-R.S. 23:1102(B). It is important to note that the statute is quasi-penal; and we remain mindful that such statutes are to be strictly construed. See Pace v. Parker Drilling Co., 382 So.2d 988, 990 (La.App. 1st Cir.1980), writ denied, 383 So.2d 1016 (La.1980). Even more important is the very fundamental tenet that the Worker's Compensation Law is to be interpreted liberally in order to "effectuate its beneficent purpose of relieving workmen of the economic burden of work-connected injuries by diffusing the cost in the channels of commerce." Lester v. Southern Casualty Insurance Co., 466 So.2d 25, 28 (La. 1985).
Defendant asserts that because plaintiffs[3] compromised their tort claim without having obtained its approval either prior to or contemporaneous with the settlement, they forfeited their right to any benefits under the compensation scheme pursuant to LSA-R.S. 23:1102(B), which provides:
If a compromise with such third person is made by the employee or his dependent, the employer or insurer shall be liable for compensation in excess of the amount recovered against such third person only if written approval of such compromise is obtained from the employer or insurer by the employee or his dependent, at the time of or prior to such compromise. Written approval of the compromise must be obtained from the employer *922 if the employer is self-insured, either in whole or in part. If the employee or his dependent fails to notify the employer or insurer of the suit against the third person or fails to obtain written approval of the compromise from the employer or insurer at the time of or prior to such compromise, the employee or his dependent shall forfeit the right to future compensation, including medical expenses. Notwithstanding the failure of the employer to approve such compromise, the employee's or dependent's right to future compensation in excess of the amount recovered from the compromise shall be reserved upon payment to the employer or insurer of the total amount of compensation benefits, and medical benefits, previously paid to or on behalf of the employee, exclusive of attorney's fees arising out of the compromise; except in no event shall the amount paid to the employer or insurer exceed fifty percent of the total amount recovered from the compromise.[4]
There is no factual dispute that plaintiffs settled with a third party without defendant's approval. Neither is there a factual dispute that defendant has refused to pay any benefits because of its LSA-R.S. 23:1081 defense. Appellant, however, argues that LSA-R.S. 23:1102(B) by its express language applies only to "future compensation" benefits, interpreting that to mean benefits payable for the weeks after the settlement rather than benefits that became payable, irrespective of whether or not they were actually paid, prior to the settlement. Defendant argues that this interpretation would lead to an absurd and inequitable result because if an employer refused to pay benefits, a claimant could wait and accrue worker's compensation benefits, then settle with the third party, and then seek the worker's compensation benefits that the employer has refused to pay. Clearly, a statute should not be interpreted in a manner that will produce such absurd results. Waggoner v. Kellogg-Moore Oil Co., 375 So.2d 197, 199 (La.App. 2d Cir.1979).
We fail to see why the legislature chose language, in drafting LSA-R.S. 23:1102(B), that limits the punitive effect to "future compensation." Clearly, though, only the right to "future compensation" is forfeited under the language of the statute. The fact that we are unable to determine why this language was used, however, does not mean its results are absurd.
The term "future compensation" in LSA-R.S. 23:1102(B) is, however, ambiguous. Webster's Third New International Dictionary (1981) (unabridged) defines "future," inter alia, as "a time that is to come... what is going to happen." What the statute intends to mean by "future" is necessarily determined relative to what is considered to be past and present. While this statute does not specify what is meant, the following excerpt reveals that it presupposes payment by the employer in the past of compensation benefits that can be repaid by the employee from his compromise, thereby reserving the employee's right to "future" reimbursement:
Notwithstanding the failure of the employer to approve such compromise, the employee's or dependent's right to future compensation in excess of the amount recovered from the compromise shall be reserved upon payment to the employer or insurer of the total amount of compensation benefits, and medical benefits, previously paid to or on behalf of the employee....
LSA-R.S. 23:1102(B). Time is here made relative: past is what has been paid previous to the compromise, future is what may become payable afterward. The statute presupposes full payment of benefits that were due prior to the compromise and presupposes that any benefits that are owed after the compromise became due after the compromise.
A fundamental rule of statutory construction is to give the statute its intended meaning. Reed v. Washington Parish Police *923 Jury, 518 So.2d 1044 (La.1988). The principle that a statute is not to be construed to produce absurd results is a means to that end in that we assume the legislature has not so intended. More importantly, it is only when there is ambiguity that we are at liberty to engage in statutory interpretation: it is not our function to correct an error in the legislature's expression of its intent unless that expression is unclear. Here, it is suggested, the language of the statute as a whole is inarticulate[5] but not ambiguous.
We disagree with our esteemed brethren on the Second Circuit who, in Martin v. Midas Muffler Shop, 535 So.2d 1152 (La. App. 2d Cir.1988), decided this issue adversely to the employee. We note that the Third Circuit in a published writ denial held that the statute applies only to compensation that becomes due after the date of the compromise. Maddox v. Sisters of Charity of the Incarnate Word, 506 So.2d 233 (La.App. 3d Cir.1987). In Martin, the Second Circuit determined that the term "future compensation" in LSA-R.S. 23:1102(B) applies to any compensation alleged to be due after the date of the compromise regardless of when it became due, observing the following:
"The critical question is whether the claimant is permitted to obtain double recoveryboth in worker's compensation and tortfor his injury. Since plaintiff did not offer evidence to the contrary, we assume that his settlement with State Farm covered loss of wages." Martin, 535 So.2d at 1154.
The assumption in Martin that the tortfeasor's settlement with his victim includes amounts for lost wages, for which he (the tort-feasor) remains liable under the statutory scheme, is not reasonable. We interpret "future compensation" to mean any compensation benefits which became payable after the compromise. This interpretation cannot be assumed to result in double recovery in the event of settlement unless we also accept the proposition that a tort-feasor will pay twice for the same thing. The Second Circuit's reasoning is premised on this notion and concludes that the employee is able to recover the same thing twice. We believe otherwise. The right to future compensation post-compromise does not necessarily equate to double recovery.
Additionally, we note that our interpretation is not inequitable inasmuch as the employer's right to recover from the tort-feasor is not prejudiced by the settlement. LSA-R.S. 23:1102(C)(4) and LSA-R.S. 23:1103. Our interpretation of LSA-R.S. 23:1102(B) burdens the tort-feasor with the responsibility of ensuring that he not be put in the position of having to pay twice for the same thing. The tort-feasor's appropriate exercise of care in negotiating a settlement without the approval required by LSA-R.S. 23:1102(B) will prevent double recovery by the victim-employee. The burden of preventing the double recovery, as we read the scheme, is on the party in whose interest it is to prevent.
Lastly, we address appellant's contention that the right to "future compensation" under LSA-R.S. 23:1102 has not been forfeited because defendant has refused to pay benefits. Appellant's right to future compensation is preserved by repayment to the employer of benefits previously paid under the express language of LSA-R.S. 23:1102(B), providing, in pertinent part:
Notwithstanding the failure of the employer to approve such compromise, the employee's or dependent's right to future compensation in excess of the amount recovered from the compromise shall be reserved upon payment to the employer or insurer of the total amount of compensation benefits, and medical benefits, attorney's fees, and penalties, previously paid to or on behalf of the employee, exclusive of attorney's fees arising out of the compromise; except in no event shall the amount paid to the employer or *924 insurer exceed fifty percent of the total amount recovered from the compromise.
This language, again, evidences the presupposition of the norm: that compensation benefits already accrued will have been paid at the time of the compromise. Our facts do not follow the norm. The statute, including the payback clause, nevertheless applies. The clause equitably mitigates the punitive effect of LSA-R.S. 23:1102(B). As we have already stated, the quasi-penal nature of LSA-R.S. 23:1102(B) requires that we construe it strictly, and the beneficent purpose of the Worker's Compensation Law requires that we interpret its provisions liberally in an employee's favor. Pace, 382 So.2d at 990; Lester, 466 So.2d at 28. With this in mind, we observe that it would be unduly inequitable to allow an employer's nonpayment of benefits to result in the inability of an employee to preserve his right to future compensation. We must remember that defendant has denied it owes any benefits at all. It has paid nothing on behalf of decedent. There is nothing for appellant to pay back because defendant has never paid anything. Common sense dictates that a right that can be preserved by the payment of nothing cannot reasonably be asserted to have expired. A contrary reading of the statute would be exemplary of an absurd result.[6]
For the reasons stated, the decision of the trial court is reversed, and this case is remanded for proceedings consistent with this opinion. Costs of this appeal are taxed to defendant.
REVERSED AND REMANDED.
NOTES
[1] There is some confusion in the record about the status of Jacquelyn Smith Burns who took this appeal. She is not listed as a petitioner in the original petition but is alleged therein to be Donald Wayne Burns' surviving spouse. The record clearly shows that this matter has been prosecuted with two sets of plaintiffs, i.e., decedent's surviving spouse and the decedent's children of a previous marriage. Neither Betty Faught, as tutrix, nor Ferris Shaine Burns has appealed. Whether Jacquelyn Smith Burns was a party plaintiff below, however, is of no moment for purposes of our jurisdiction of this appeal. LSA-C.C.P. art. 2086.
[2] It would appear plaintiffs intended to cite LSA-R.S. 23:1231 providing for the payment of benefits to dependents upon the death of an employee covered under the Louisiana Worker's Compensation Law.
[3] Betty Faught, as tutrix on behalf of Donald Stacy Burns and Bennett Scott Burns, as well as Ferris Shaine Burns, individually, and Jacquelyn Smith Burns.
[4] LSA-R.S. 23:1102(B) was amended by Acts 1985, No. 926, § 1, to become effective January 1, 1986. The amendment deleted attorney fees and penalties from the payback provision. All reference to LSA-R.S. 23:1102(B) is as it appeared prior to this amendment.
[5] The statute is inarticulate because it is incomplete. It presupposes the norm: that the employer will have paid benefits until the unapproved compromise and then will cease to pay benefits upon determining that the employee has settled with a third person. With this in mind, we see no ambiguity in its meaning.
[6] Additionally, we observe that the fact that the language regarding repayment to preserve "future" benefits provides no means to preserve the right to past benefits, further strengthens the argument that the punitive clause operates only on compensation payable after the settlement.